George **FELDMAN**, as Trustee in Bankruptcy of Leasing Consultants Incorporated, Bankrupt, Plaintiff,

v.

**CHASE MANHATTAN BANK, N.A.,**
Defendant.

No. 73 Civ. 1205.

United States District Court,
S. D. New York.

Jan. 8, 1974.

Hahn, Hessen, Margolis & Ryan, New York City (Daniel A. Zimmerman, New York City, of counsel), for plaintiff.

Milbank, Tweed, Hadley & McCloy, New York City (Andrew J. Connick, Barry G. Radick, New York City, of counsel), for defendant.

BAUMAN, District Judge.

This is an action by a trustee in bankruptcy brought under § 70 of the Bankruptcy Act, 11 U.S.C. § 110, to invalidate the assignment of an aircraft lease made by the lessor bankrupt to defendant bank and to have defendant's interests in it declared subordinate to those of plaintiff trustee.

Plaintiff moves for summary judgment pursuant to Rule 56 of the Federal Rules and defendant cross moves for summary judgment and counterclaims for the proceeds from the trustee's sale of collateral.

## I.

The following facts are undisputed. On August 18, 1970 Leasing Consultants, Incorporated (hereinafter "LCI"), a New York corporation, filed a petition for an arrangement under Chapter XI of the Bankruptcy Act in the United States District Court for the Eastern District of New York and was adjudicated a bankrupt some two months later on October 16, 1970.

During an earlier period of relative financial salubrity, LCI purchased a Cessna 411 airplane from Sunny South Aircraft Service, Inc., which it leased to Devcon International[1] for a sixty month term at a monthly rental of $2,430.40. The Devcon lease was not filed with the Federal Aviation Agency Aircraft Registry in Oklahoma City.

In July, 1967, LCI borrowed $140,963.-20 from Chase Manhattan Bank (hereinafter "Chase"). To secure its loan Chase took a "chattel mortgage and se-curity agreement", dated July 12, in the airplane; a written assignment from LCI of the Devcon lease dated July 11; and physical possession of the lease. Chase then recorded the chattel mortgage with the FAA Registry on July 19, but did not record either the Devcon lease or its assignment.

In August and September of 1971 Devcon's monthly rental payments to Chase were not promptly made and subsequently Devcon informed the trustee that it possessed a purchase option on the airplane which it then offered to exercise. The trustee, finding no such purchase option in the lease or in the bankrupt's files, rejected the offer.

By January 1, 1972, Devcon had become delinquent in its rental payments, whereupon Chase seized the airplane with the intention of selling it at public auction. One day before the sale, on March 20, 1972, Devcon commenced action against Chase in the United States District Court for the Southern District of Florida to restrain the sale and reform the lease agreement to include a purchase option at a price of $10.[2]

There ensued a number of conferences among attorneys for Chase, Devcon and the trustee, after which, in January, 1973 Chase and Devcon executed a stipulation of discontinuance of the Florida action pursuant to which Chase assigned all of its interest in the mortgage to Devcon, and Devcon paid Chase $18,000, in full satisfaction of the remaining rentals due. Three months later, in April, the trustee sold the airplane to Devcon for $20,000.

What is at issue here is the $53,460 [3] Devcon paid to Chase under the assigned lease after LCI filed its petition in bankruptcy on August 18, 1970, including the $18,000 paid in January, 1973. The trustee contends that Chase's failure to file LCI's assignment of the lease with the FAA registry left Chase with-

---

1. Formerly known as Zinke-Smith, Inc.

2. An amended complaint was filed on May 17 including the trustee as a defendant and

adding a cause of action against Chase based upon a theory of wrongful seizure.

3. Any remaining underlying indebtedness of LCI to Chase is not at issue.

out a perfected security interest in the lease payments making its interest subordinate to his rights and invalid as against him. Chase contends that its security interest in the lease was perfected by taking physical possession of it and by filing the chattel mortgage with the FAA and that recording the assignment was not a condition for perfection. Chase further contends that the trustee sold the airplane without adequate notice to Chase and for less than its fair market value and counterclaims for $55,000.

## II.

What remains for my determination is the legal question as to whether, by taking possession of the lease and filing the chattel mortgage with the FAA, Chase perfected its security interest or whether, under the law, more was required.

■ Section 503 of the Federal Aviation Act, 49 U.S.C. § 1403,[4] establishes a nation wide recording system for security interests in airplanes. Any conveyance for which recording is required by Section 1403(a)(1) as "affect[ing] the title to, or any interest in, any civil aircraft," is invalid except as against those persons with actual notice if it is not recorded. See 49 U.S.C. § 1403(c). Its purpose, as stated in Marsden v. Southern Flight Service, Inc., 227 F.Supp. 411, 415 (M.D.N.C.1961), is "to protect persons who have dealt on the faith of

4. The relevant parts of § 1403 are as follows:

"§ 1403—Recordation of aircraft ownership—Establishment of recording system

(a) The Administrator shall establish and maintain a system for the recording of each and all of the following:

(1) Any conveyance which affects the title to, or any interest in, any civil aircraft of the United States;

\*        \*        \*        \*        \*

Recording of releases, cancellations, discharges or satisfactions.

(b) The Administrator shall also record under the system provided for in subsection (a) of this section any release, cancellation, discharge, or satisfaction relating to any conveyance or other instrument recorded under said system.

Validity of conveyances or other instruments; filing

(c) No conveyance or instrument the recording of which is provided for by subsection (a) of this section shall be valid in respect of such aircraft . . . against any person other than the person by whom the conveyance or other instrument is made or given, his heir or devisee, or any person having actual notice thereof, until such conveyance or other instrument is filed for recordation ·in the office of the administrator . . . .

Effect of recording

(d) Each conveyance or other instrument recorded by means of or under the system provided for in subsection (a) or (b) of this section shall from the time of its filing for recordation be valid as to all persons without further or other recordation

.    .    .    .

Form of conveyances or other instruments

(e) No conveyance or other instrument

shall be recorded unless it shall have been acknowledged before a notary public or other officer authorized by the law of the United States, or of a State, Territory, or possession thereof, or the District of Columbia, to take acknowledgment of deeds.

Index of conveyances and other instruments

(f) The Administrator shall keep a record of the time and date of the filing of conveyances and other instruments with him and of the time and date of recordation thereof. He shall record conveyances and other instruments filed with him in the order of their reception, in files to be kept for that purpose, and indexed according to—

(1) the identifying description of the aircraft, aircraft engine, or propeller, or in the case of an instrument referred to in subsection (a)(3) of this section, the location or locations specified therein, and

(2) the names of the parties to the conveyance or other instrument.

Regulations

(g) The Administrator is authorized to provide by regulation for the endorsement upon certificates of registration, or aircraft certificates, of information with respect to the ownership of the aircraft for which each certificate is issued, the recording of discharges and satisfactions of recorded instruments, and other transactions affecting title to or interest in aircraft, aircraft engines, propellers, appliances, or parts, and for such other records, proceedings, and details as may be necessary to facilitate the determination of the rights of parties dealing with civil aircraft of the United States, aircraft engines, propellers, appliances, or parts."

recorded title . . . and as to whom it would be a fraud to give effect to unrecorded titles to their detriment." See also International Atlas Services, Inc. v. Twentieth Century Aircraft Co., 251 Cal.App.2d 434, 438, 59 Cal.Rptr. 495, 497 (1967). Like the Federal Ship Mortgage Act,[5] the FAA recording system represents an attempt by Congress to give fair notice of security interests in highly mobile collateral to interested parties through one readily accessible, national filing system.

▉ Because it represents federal action in this area, section 1403 preempts, albeit not completely, those provisions of the Uniform Commercial Code which might otherwise apply as is implicitly recognized by Section 9—104 of the U.C.C.[6] and explicitly acknowledged in the Official Comment to that section.[7] Validation under the FAA recording system is in every respect equivalent to perfection of a security interest under the U.C.C.,[8] although, unlike the U.C.C., the FAA system provides only one way in which security interests in aircraft can be perfected. It does not envisage the variety of methods permitted for differing types of collateral.[9] So, the validity of Chase's security interest in the Devcon lease against the trustee must be determined solely under the FAA recording system.

This, in turn, depends upon whether the assignment is a "conveyance which affects the title to, or any interest in, any civil aircraft" for which Section 1403(a)(1) requires recordation, or, even if so, whether the trustee had the actual notice of the assignment contemplated by Section 1403(c).

Unfortunately, the regulations promulgated by the Federal Aviation Agency pursuant to Section 1403 do not resolve the first question. Although 14 C.F.R. § 49.31(a) specifically requires the recording of "a bill of sale, contract of conditional sale, assignment of an interest under a contract of conditional sale, mortgage, assignment of mortgage, lease, equipment trust, notice of tax lien or of other lien" as instruments affecting title to or an interest in an aircraft,

---

5. 46 U.S.C. §§ 911–984 (1970).

6. "§ 9–104. Transactions Excluded From Article

This Article does not apply

(a) to a security interest subject to any statute of the United States such as the Ship Mortgage Act, 1920, to the extent that such statute governs the rights of parties to and third parties affected by transactions in particular types of property . . . .

Uniform Commercial Code § 9—104."

7. "Official Comment

\*     \*     \*     \*     \*

Purposes:

To exclude certain security transactions from this Article.

1. Where a federal statute regulates the incidents of security interests in particular types of property, those security interests are of course governed by the federal statute and excluded from this Article. The Ship Mortgage Act, 1920, is an example of such a federal act. Legislation covering aircraft financing has been proposed to the Congress, and, if enacted, would displace this Article in that field. The present provisions of the Civil Aeronautics Act (49 U.S.C.A. § 523) call for registration of title to and liens upon aircraft with the Civil Aeronautics Administrator and such registration is recognized as equivalent to filing under this Article (Section 9—302(3)); but to the extent that the Civil Aeronautics Act does not regulate the rights of parties to and third parties affected by such transactions, security interests in aircraft remain subject to this Article, pending passage of federal legislation.

U.C.C. § 9—104, Comment 1."

8. See generally Note, Security Interests in Aircraft, 10 B.C.Ind. & Com.L.Rev. 972 (1969).

9. See Levie, Security Interests in Chattel Paper, 78 Yale L.J. 935. For instance, U.C.C. § 9–305 provides for the perfection of a security interest in "chattel paper" by the secured party taking possession of the collateral, the chattel paper itself. On the other hand, in order to perfect a security interest in "goods," it is necessary to file a financing statement in the state where the goods are located. See U.C.C. §§ 9–102(1), 9–302, 9–401(1)(c). The FAA recording system draws no distinctions, for purposes of perfection, among various types of collateral.

it makes no reference to the assignment of an interest under a lease.

■ It would seem incontrovertible that the statutory language "conveyance which affects . . . any interest in" an airplane should encompass an assignment of a lease. Clearly the present possessory right and the entitlement to rentals conferred by a lease agreement are property "interests" as the term has been generally understood;[10] less than "title" perhaps, but "interests" nonetheless.[11] It then follows that assigning a lease "affects" the lessor's interest by transferring its primary incident, the right to receive rentals.

Therefore, Section 1403(a)(1) in my view requires that an assignment be recorded with the FAA in order to perfect a security interest in the lease. Chase apparently regarded the lease as falling within the designation "chattel paper" set forth by U.C.C. 9–105(1)(b), and thus attempted to perfect its security interest by taking possession of the lease, as permitted by U.C.C. § 9–305. But, as we have seen, the FAA recording system preempts the U.C.C. perfection requirements as to interests in aircraft and Chase's attempted U.C.C.— perfection was futile.

■ The conclusion seems inevitable that Section 1403 should be construed broadly to embrace all conveyances of interests in airplanes when the failure to record them might be misleading to creditors and other innocent third parties. See Marsden v. Southern Flight Service, Inc., supra, 227 F.Supp. at 415. Here, Chase filed only the chattel mortgage and not the lease or its assignment.

This meagre filing does not give notice that the airplane was leased—a conveyance for which filing is specifically required by 14 C.F.R. § 49.31(a)—or that the lease payments were to be made to Chase and not to LCI. A potential creditor of LCI, or even a subsequent purchaser of the airplane, consulting the FAA files, might be misled into the wholly justifiable conclusion that LCI owned a valuable possessory interest in an airplane and, a fortiori, was entitled to the rental payments (which may well have exceeded the payments due under the mortgage) should such possessory interest be leased out. The perfection of security interests under Section 1403 is not too burdensome to expect of anyone seeking its protection. See Smith v. Eastern Airmotive Corp., 99 N.J.Super. 340, 240 A.2d 17 (1968).

■ Insofar as the trustee in bankruptcy succeeds to the rights of creditors who could, by the date of bankruptcy, have completed all necessary processes to perfect a lien in the bankrupt's property by reason of Section 70c of the Bankruptcy Act, 11 U.S.C. § 110(c), and since the notice given by Chase would have been inadequate as to them, I find that the filing of the chattel mortgage was inadequate to confer the actual notice of the assignment contemplated by 49 U.S.C. § 1403(c) upon the trustee.

Therefore, I hold that Chase's failure to file either the Devcon-LCI lease or its assignment to Chase left its security interest in the lease unperfected. As a consequence, Chase's interest is subordinate to the rights of the trustee and invalid as against him.

---

10. In this connection see Coke upon Littleton * 345b:

"Interest . . . is vulgarly taken for a terme or chattle reall, and more particularly for a future terme . . . . [I]n legall understanding, it extendeth to estates, rights, and titles, that a man hath of, in, to, or out of lands; for he is truly said to have an interest in them: and by the grant of *totum interesse suum* in such lands, as well reversions as possessions in fee simple shall passe . . . . "

11. Tenants or lessees are said to be possessed of a leasehold estate, and landlords or lessors to possess a reversion. I American Law of Property § 3.2 (A. J. Casner ed. 1952). Such estates are also "interests" which may be assignable, depending upon the terms of the lease. Id. § 3.56 at 294–95. When a lease is assigned by the lessor, the right to receive rentals is transferred to the assignee, "affecting" the lessor's interest by removing one of its primary incidents, the right to receive rentals.

■ Chase's counterclaim for the market value of the airplane must fail since Chase assigned all of its interest in the mortgage to Devcon prior to the trustee's sale. In short, since Chase had divested itself of its reversionary interest under the chattel mortgage before the sale, it consequently suffered no resulting loss as a result of the sale.

■ Having successfully maintained his claim under Section 70(c) of the Bankruptcy Act, 11 U.S.C. § 110(c), the trustee acquired the status of a creditor as of "the date of bankruptcy," interpreted in Lewis v. Manufacturers National Bank, 364 U.S. 603, 607, 81 S.Ct. 347, 5 L.Ed.2d 323 (1961), to be the date upon which the petition in bankruptcy is filed. Accordingly, the trustee is entitled to the payments received by Chase from Devcon after that date, August 18, 1970.

No genuine issue exists as to any material fact and plaintiff is entitled to judgment as a matter of law. Accordingly, summary judgment is granted for the plaintiff-trustee. The parties are directed to settle order on notice in the amount of $53,460 plus interest.

It is so ordered.