George **FELDMAN**, as Trustee in Bankruptcy of Leasing Consultants Incorporated, Bankrupt, Plaintiff,

v.

**FIRST NATIONAL CITY BANK,**
Defendant.

No. 73 Civ. 1722.

United States District Court,
S. D. New York.

Jan. 8, 1974.

Hahn, Hessen, Margolis & Ryan, New York City (Daniel A. Zimmerman, New York City, of counsel), for plaintiff.

Zalkin & Cohen, New York City (Henry L. Goodman, New York City, of counsel), for defendant.

BAUMAN, District Judge.

This is an action by a trustee in bankruptcy brought under § 70 of the Bankruptcy Act, 11 U.S.C. § 110, to invalidate assignments of aircraft leases made by a bankrupt lessor to defendant bank and to declare defendant's interests in them subordinate to those of the plaintiff trustee. Plaintiff also seeks the proceeds from the sale of certain equipment in which defendant claims to have perfected a security interest.

Plaintiff moves for summary judgment pursuant to Rule 56 of the Federal Rules and for an order directing defendant to turn over all payments received under the leases subsequent to the filing of the petition in bankruptcy. Defendant moves to dismiss pursuant to Rule

12(b)(6) of the Civil Rules on the ground that the action is time barred.

## I.

On December 15, 1969, Leasing Consultants, Incorporated (hereinafter "LCI") and First National City Bank (hereinafter "FNCB") entered into a loan and security agreement, pursuant to which FNCB agreed to assist LCI in its business of purchasing and then leasing equipment to its customers by making loans to LCI. LCI agreed to assign and deliver the leases to FNCB and grant it a continuing security interest in the property leased. On December 30 and 31, 1969, FNCB filed UCC–1 financing statements against LCI with the Registrar of the City of New York, Queens County, and with the New York Secretary of State covering a "[c]ontinuing security interest in leases and any and all rents due and to become due thereunder, including all related equipment described therein, chattel paper represented thereby, accounts receivable therewith and proceeds arising therefrom." [1]

LCI filed a petition for arrangement under Chapter XI of the Bankruptcy Act in the United States District Court for the Eastern District of New York on August 18, 1970, and was adjudicated a bankrupt on October 16, 1970.

## II.

### The Vieques Transaction

There is no dispute as to the following facts.

LCI and Vieques Air Link, Inc. (hereinafter "Vieques") executed a lease dated March 5, 1970 covering a Piper Cherokee airplane for which LCI had paid $27,878. Under its terms Vieques undertook to make 60 monthly payments of $662.10, aggregating $39,726, and was granted an option to purchase the airplane upon the completion of the lease for $1,393.90, which Vieques prepaid. LCI assigned the Vieques lease to FNCB in an instrument dated July 24, 1970. Neither the lease nor its assignment was recorded with the Federal Aviation Agency pursuant to 49 U.S.C. § 1403.

An issue of fact exists between the parties as to the number of payments received by FNCB under the Vieques lease.[2]

### The Raffa Transaction

On December 8, 1969, LCI and Raffa Van Atta, Ltd. (hereinafter "Raffa") executed a lease covering a 1963 Beechcraft airplane for which LCI had paid $43,800. The lease required Raffa to make 60 monthly payments of $1,093.25, for a total of $65,595, upon completion of which Raffa was given an option to purchase for $4,380, which sum Raffa prepaid upon execution of the lease. LCI assigned the Raffa lease to FNCB on December 29, 1969; neither the lease nor its assignment was recorded with the FAA.

The amount received by FNCB under the Raffa lease is at issue between the parties.[3]

### The True Transaction

On March 2, 1970, LCI leased a 1969 Pipe Cherokee Arrow to James W. True. The airplane, for which LCI had paid $24,070, was leased to True for five years at a monthly rental of $571.66, totalling $34,299.60. True was granted an option to purchase the airplane upon completion of the term for $2,407, of which he paid one-half, or $1,203.50, upon execution. LCI assigned the True lease to FNCB on July 24, 1970, but

---

1. Exhibit 2 to affidavit of Louis A. Kollander, June 12, 1973.

2. The trustee submits that FNCB received, between May 1, 1973 and August 18, 1970, 32 payments of $662.10, for a total of $21,187.20. FNCB contends that it received 33 payments aggregating $21,849.30.

3. The trustee maintains that FNCB received 32 payments of $1,093.25 between August 18, 1970 and May 1, 1973, for a total of $34,984. FNCB states that it received only 27 payments aggregating $27,331.25.

neither the lease nor its assignment was recorded with the FAA.

The parties disagree as to the total amount received by FNCB under this lease.[4]

This suit was commenced on April 18, 1973, two years and eight months after the Chapter XI petition was filed and two years and six months after LCI was adjudicated a bankrupt.

Apart from the disputes as to the amounts actually received by FNCB, the parties' disagreements focus upon the legal interpretation to be placed upon the undisputed facts I have set forth. FNCB argues that it perfected a security interest in the leases and proceeds under them through the UCC–1 statements filed in Queens County and with the New York Secretary of State since they were clearly encompassed by the language of the financing statement. The trustee argues that the UCC filing was ineffective to perfect such a security interest because FNCB failed to record the assignments with the Federal

Aviation Agency. Consequently, he contends, FNCB's interest is subordinate to the rights of the trustee or invalid as against him. FNCB argues that, in any event, the trustee's action is time barred by Section 11e of the Bankruptcy Act, 11 U.S.C. § 29(e).

### III.

By filing UCC–1 financing statements to cover LCI's leases and the rents due under them in Queens and with the Secretary of State, FNCB clearly intended to perfect a security interest in the leases, treated as chattel paper by U.C.C. §§ 9–304 and 9–305. The relevant question is whether this filing was effective to that end.

■ As I have indicated in my opinion in Feldman v. Chase Manhattan Bank, 368 F.Supp. 1327, filed this day, the only way in which a security interest in assigned aircraft leases can be perfected by the assignee is by filing the assignments with the Federal Aviation Agency recordation system, pursuant to 49 U.S.C. § 1403.[5] This FNCB

---

4. The trustee states that the True lease was paid out on September 10, 1970 for $24,226.-93; FNCB contends it received only $23,438.06 under the lease.

5. The relevant parts of Section 1403 are as follows:

"§ 1403—Recordation of aircraft ownership —Establishment of recording system

(a) The Administrator shall establish and maintain a system for the recording of each and all of the following:

(1) Any conveyance which affects the title to, or any interest in, any civil aircraft of the United States;

\* \* \* \* \*

Recording of releases, cancellations, discharges, or satisfactions.

(b) The Administrator shall also record under the system provided for in subsection (a) of this section any release, cancellation, discharge, or satisfaction relating to any conveyance or other instrument recorded under said system.

Validity of conveyances or other instruments; filing

(c) No conveyance or instrument the recording of which is provided for by subsection (a) of this section shall be valid in respect of such aircraft . . .

against any person other than the person by whom the conveyance or other instrument is made or given, his heir or devisee, or any person having actual notice thereof, until such conveyance or other instrument is filed for recordation in the office of the Administrator . . . .

Effect of recording

(d) Each conveyance or other instrument recorded by means of or under the system provided for in subsection (a) or (b) of this section shall from the time of its filing for recordation be valid as to all persons without further or other recordation.

. . .

Form of conveyance or other instruments

(e) No conveyance or other instrument shall be recorded unless it shall have been acknowledged before a notary public or other officer authorized by the law of the United States, or of a State, Territory, or possession thereof, or the District of Columbia, to take acknowledgment of deeds.

Index of conveyances and other instruments

(f) The Administrator shall keep a record of the time and date of the filing of conveyances and other instruments with him and of the time and date of recordation thereof. He shall record conveyances and

did not do and it, therefore, is not, in my view, a secured creditor with respect to the LCI-Vieques, Raffa, and True leases.[6]

■ FNCB also argues that the trustee's action is time barred by Section 11e of the Bankruptcy Act, 11 U.S.C. § 29(e).[7] That section provides that a trustee may bring an action on any claim on behalf of the bankrupt's estate within two years from the date of adjudication unless a longer period is allowed by state or federal non-bankruptcy law. However where the trustee's claim arises under the Bankruptcy Act itself,

as in the case of actions under Section 60, 11 U.S.C. § 96, to avoid a preference, the suit is governed exclusively by the two years prescribed by Section 11e. Herget v. Central National Bank & Trust Co., 324 U.S. 4, 65 S.Ct. 505, 89 L.Ed. 656 (1945). Hence, statutes of limitations of greater length than Section 11e are applicable only to those claims which originate outside the Bankruptcy Act.[8]

■ The trustee's suit appears[9] to have been brought under Section 70c of the Bankruptcy Act, 11 U.S.C. § 110(c),[10] which invests the trustee, as of

---

other instruments filed with him in the order of their reception, in files to be kept for that purpose, and indexed according to—

(1) the identifying description of the aircraft, aircraft engine, or propeller, or in the case of an instrument referred to in subsection (a)(3) of this section, the location or locations specified therein, and

(2) the names of the parties to the conveyance or other instrument.

Regulations

(g) The Administrator is authorized to provide by regulation for the endorsement upon certificates of registration, or aircraft certificates, of information with respect to the ownership of the aircraft for which each certificate is issued, the recording of discharges and satisfactions of recorded instruments, and other transactions affecting title to or interest in aircraft, aircraft engines, propellers, appliances, or parts, and for such other records, proceedings, and details as may be necessary to facilitate the determination of the rights of parties dealing with civil aircraft of the United States, aircraft engines, propellers, appliances, or parts."

6. This opinion does not purport to consider whether § 1403 is a trap for the unwary, a snare in the would-be creditor's hunt for perfection of his security interest. It may be that the filing practices of large secured creditors have been established without regard to the breadth of the concluding words of § 1403(a)(1), "affects the title to, or any interest in, any civil aircraft. . . ."

7. "(e) A receiver or trustee may, within two years subsequent to the date of adjudication or within such further period of time as the Federal or State law may permit, institute proceedings in behalf of the estate upon any claim against which the period of limitation fixed by Federal or State

law had not expired at the time of the filing of the petition in bankruptcy. Where, by any agreement, a period of limitation is fixed for instituting a suit or proceeding upon any claim, or for presenting or filing any claim, proof of claim, proof of loss, demand, notice, or the like, or where in any proceeding, judicial or otherwise, a period of limitation is fixed, either in such proceeding or by applicable Federal or State law, for taking any action, filing any claim or pleading, or doing any act, and where in any such case such period had not expired at the date of the filing of the petition in bankruptcy, the receiver or trustee of the bankrupt may, for the benefit of the estate, take any such action or do any such act, required or permitted to the bankrupt, within a period of sixty days subsequent to the date of adjudication or within such further period as may be permitted by the agreement, or in the proceeding or by applicable Federal or State law, as the case may be." 11 U.S.C. § 29(e).

8. See 1 Collier, Bankruptcy Manual § 11.67 (2d ed. 1972).

9. The trustee's papers also refer in passing to § 70e, 11 U.S.C. § 110(e), which permits the trustee to assert the rights of any actual creditor of the bankrupt as to whom the challenged transfer is void.

10. "(c) The trustee may have the benefit of all defenses available to the bankrupt as against third persons, including statutes of limitation, statutes of frauds, usury, and other personal defenses; and a waiver of any such defense by the bankrupt after bankruptcy shall not bind the trustee. The trustee, as to all property, whether or not coming into possession or control of the court, upon which a creditor of the bankrupt could have obtained a lien by legal or equitable proceedings at

the date of bankruptcy, with all the powers the state law would allow to a judgment creditor who had by the date of bankruptcy completed all necessary processes to perfect a lien in the property.[11] Rights asserted under Section 70c depend upon non-bankruptcy law for their substantive content; thus Section 11e is inapplicable unless it allows the trustee more time than does the law of the jurisdiction creating the substantive rights. In Buchman v. American Foam Rubber Corp., 250 F.Supp. 60, 71 (S.D.N.Y.1971), Section 70e of the Act, which permits the trustee to assert the rights of any actual creditor of the bankrupt as to whom a particular transfer is void, was held to be governed by the period of limitations for the state statute which created the creditor's right, and Section 11e was held inapplicable because it prescribed a lesser term. The reasoning of *Buchman* would seem applicable to actions such as this brought under Section 70c as well. The substantive right upon which the trustee sues is not created by the Bankruptcy Act; it only confers the authority to assert a lien creditor's right created elsewhere.

The determination of the statute of limitations applicable to the trustee's claim, then, must start at the source of the substantive rights asserted and end with a determination of whether its limitation period exceeds the two years of Section 11e. The attack on the validity of FNCB's purported security interest proceeds from 49 U.S.C. § 1403(c), which provides that no conveyance for which FAA recording is required shall be valid against those without actual notice of it. Section 1403, however, does not contain a statute of limitations, and so we must inquire into whether the applicable period of limitations is Section 11e of the Bankruptcy Act or whether it is "fixed" by Section 1403 within the meaning of Section 11e.

No authority exists for the proposition that a state or federal non-bankruptcy statute of limitations, in order to supplant the Section 11e period, must be a component of, or explicitly incorporated by, the statute which creates the cause of action.[12] I suggest that to supplant the Section 11e period, a statute of limitations need only be applicable to the cause of action; it need not be an organic part of the statute in which the cause of action originates.[13]

The preemption of otherwise applicable state law by Section 1403 of the Federal Aviation Act, as discussed in my opinion in Feldman v. Chase Manhattan Bank, 368 F.Supp. 1327, is considerably less than total. It has been established that such preemption goes only to the validity of purported security interests and does not determine the issue of the priority of security interests, see Northern Illinois Cor. v. Bishop Distributing Co., 284 F.Supp. 121 (W.D.Mich. 1968); Texas National Bank v. Aufderheide, 235 F.Supp. 599 (E.D.Ark.1964); nor validate security interests which are void under state law, see Aircraft Investment Corp. v. Pezzani & Reid Equipment Co., 205 F.Supp. 80, 82 (E.D. Mich.1962); cf. State Securities Co. v. Aviation Enterprises, Inc., 355 F.2d 225, 229 (10th Cir. 1966).

---

the date of bankruptcy, shall be deemed vested as of such date with all the rights, remedies, and powers of a creditor then holding a lien thereon by such proceedings, whether or not such a creditor actually exists." 11 U.S.C. § 110(c).

11. See 1A Collier, Bankruptcy Manual § 70.-30.

12. See, e. g., 1 Collier, Bankruptcy Manual § 11.07 (2d ed. 1972), which refers only to the "applicable" state or federal nonbankruptcy period of limitations.

13. The rule enunciated in Holmberg v. Armbrecht, 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743 (1946), that state statutes of limitations are inapplicable to actions in federal court to enforce federally-created equitable rights, does not govern suits brought under § 70 because the rights sued upon are state, not federal creations. See Buchman v. American Foam Rubber Corp., supra, 250 F.Supp. at 71.

The question of the period of limitations applicable to trustees' actions under Section 1403 appears to be a novel one. It is clear, however, that Section 1403 determines only the validity of security interests; but like the issue of priority among competing security interests, the question of the period within which to sue is left to state law.

It is not contested that plaintiff trustee, the bankrupt and FNCB are all either residents of New York or have their principal offices located there. Therefore, the relevant New York statute of limitations would seem to be determinative, i. e., N.Y.C.P.L.R. §§ 201–218 (McKinney's Consol.Laws 1972), which sets forth different periods of limitations for different theories of action. Plaintiff's challenge to defendant's purported security interest under 49 U.S.C. § 1403(c) might conceivably fall into three different categories: an action for monies had and received, to set aside a conveyance of personalty, or upon a constructive trust. C.P.L.R. § 231(i). All are governed by the residual six year statute contained in C.P.L.R. § 213(1). In that the trustee's suit was commenced April 18, 1973, two years and eight months after the petition in bankruptcy was filed and two years and six months after LCI was adjudicated a bankrupt the matter becomes academic.

For the reasons stated above, defendant's motion to dismiss by reason of the time bar of Section 11e, 11 U.S.C. § 29(e), is denied. Summary judgment for the plaintiff is granted and, insofar as the parties contest the amount received by FNCB under each of the leases, the action is referred to a magistrate to hear and report on the issue of damages.

### IV.

#### The Music Merchants Lease

Again, the following facts are undisputed.

On January 24, 1969, LCI leased to Music Merchants of America, Inc. (hereinafter "Music Merchants") non-aviation equipment located in Phoenix, Arizona, for a term of 36 months. Pursuant to its agreement with FNCB of December 15, 1969 and the UCC financing statements subsequently filed in New York, LCI granted FNCB a security interest in the Music Merchants lease and equipment and assigned the lease to FNCB on June 17, 1970. However, the papers contain no allegation that FNCB took possession of the lease. No financing statement was filed in Arizona. At the completion of the lease term, FNCB sold the equipment to the lessee for $8,550.

The trustee moves for summary judgment, alleging that FNCB failed to perfect its security interest and that consequently, its security interest is subordinate to the rights of the trustee, who claims to be entitled to the proceeds of the sale. The bank argues that an issue of fact exists as to whether the Music Merchants "lease" constituted a true lease or a conditional sales agreement.

### V.

Unlike the situations considered earlier in this opinion, the perfection of FNCB's security interest in the lease and equipment is governed by Article 9 of the Uniform Commercial Code. The distinction between a conditional sales agreement and a true lease thus becomes a crucial one. If the Music Merchants "lease" is a true lease, FNCB's failure to file a financing statement in Arizona, the location of the equipment, left it without a perfected security interest in LCI's reversionary interest, see U.C.C. § 9–105(f); 9–109(2); 9–102(1), because a security interest in "goods" (the reversionary interest in the equipment) may be perfected only by filing a financing statement in the state where they are located. See U.C.C. § 9–401(1)(6). On the other hand, if the Music Merchants "lease" was in reality a conditional sales agreement, Music Merchants owned the equipment and FNCB perfected its security interest by its filing in New York, see U.C.C. § 9–401(1)(c).

**1340**

This litigation is on all fours with In the Matter of Leasing Consultants, Inc., 486 F.2d 367 (2nd Cir., 1973) which involved the same bankrupt, trustee and bank, but a different lease. In that case the bank had filed a financing statement in New York to cover leased equipment located in New Jersey. The Second Circuit remanded for an evidentiary hearing as to whether the "lease" instruments were true leases or disguised security agreements, in view of the significance of that factor in determining the bank's security interest. (486 F.2d at 373).

 As in *Leasing Consultants*, the papers submitted on the motion for summary judgment do not enable me to make such a determination. Although the lease contains no purchase option, the bank may be able to show that one had been agreed upon by LCI and Music Merchants, even though it was not incorporated in the lease; or that they had agreed at the time the lease was signed to leave the question for future negotiation, factors extrinsic to the lease as well as "the contents of the lease itself" may be considered by the court. *Leasing Consultants*, supra, 486 F.2d at 373, citing In re Walter W. Willis, Inc., 313 F.Supp. 1274, 1278 (N.D.Ohio 1970), aff'd, 440 F.2d 995 (6th Cir. 1971).

Therefore, plaintiff's motion for summary judgment is denied. An evidentiary hearing is ordered to aid in this determination.

Defendant's motion to dismiss the action as time-barred under Section 11e of the Bankruptcy Act is denied. The trustee's action is brought under Section 70, to which state statutes of limitations are applicable, see Part III supra.

## VI.

Summary judgment is granted to the plaintiff-trustee in the Vieques, Raffa and True matters. Accordingly, the trustee is entitled to judgment in the amount of the payments made to FNCB after the petition in bankruptcy was filed on August 18, 1970, plus interest. The case is referred to a magistrate to hear and report as to the amount of such payments. Defendant's motion to dismiss is denied.

Summary judgment is denied as to the Music Merchants litigation and an evidentiary hearing, to resolve the issues noted above, is ordered. Defendant's motion to dismiss is denied.

It is so ordered.