**CIM INTERNATIONAL, a Utah Corporation, Plaintiff-Appellant,**

**v.**

**UNITED STATES of America, Defendant-Appellee.**

No. 78–2701.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 2, 1980.

Decided Dec. 22, 1980.

James Victor Jordan, Solish & Jordan, Los Angeles, Cal., for plaintiff-appellant.

Philip I. Brennan, Washington, D. C., for defendant-appellee.

Before MARKEY,* Chief Judge, United States Court of Customs and Patent Appeals, and WALLACE and SKOPIL, Circuit Judges.

MARKEY, Chief Judge.

CIM International (CIM), alleged owner of an aircraft, appeals the grant of summary judgment upholding the seizure and sale of the aircraft in satisfaction of tax liens against Austin Milling Co., a Nevada Corporation (Austin), a third party taxpayer. We reverse and remand.

## Background

The appeal being from a summary judgment, the facts set forth in the affidavits of record must be accepted as true.

On July 7, 1976 Austin bought a 1953 Beachcraft aircraft from Woodall Motor Company (Woodall), giving Woodall a promissory note for the entire $37,092.34 purchase price, secured by an agreement granting a security interest in the aircraft to Woodall. On July 26, 1976 Austin filed an ownership statement with the Federal Aviation Administration (FAA) in accordance with Section 1403 of the Federal Aviation Act of 1958, 49 U.S.C. § 1403 et seq. (Act).[1]

On August 2, 1976 the Empire Savings Bank of Springfield, Missouri (Empire), having been assigned Woodall's interest with recourse, filed with the FAA copies of Austin's note, Woodall's security agreement and Woodall's assignment to Empire. On August 6, 1976, Empire filed a financing

---

* The Honorable Howard T. Markey, Chief Judge, United States Court of Customs and Patent Appeals, sitting by designation.

1. § 1403. Recordation of aircraft ownership
   (a) Establishment of recording system
   The Secretary of Transportation shall establish and maintain a system for the recording of each and all of the following:
   (1) Any conveyance which affects the title to, or any interest in, any civil aircraft of the United States;
   (2) Any lease, and any mortgage, equipment trust, contract of conditional sale, or other instrument executed for security purposes, which lease or other instrument affects the title to, or any interest in, any specifically identified aircraft engine or engines. . . .
   (b) Recording of releases, cancellations, discharges, or satisfactions

The Secretary of Transportation shall also record under the system provided for in subsection (a) of this section any release, cancellation, discharge, or satisfaction relating to any conveyance or other instrument recorded under said system.
(c) Validity of conveyances or other instruments; filing
   No conveyance or instrument the recording of which is provided for by subsection (a) of this section shall be valid in respect of such aircraft, aircraft engine or engines, propellers, appliances, or spare parts against any person other than the person by whom the conveyance or other instrument is made or given, his heir or devisee, or any person having actual notice thereof, until such conveyance or other instrument is filed for recordation in the office of the Secretary of Transportation . . . .

statement with the Secretary of State of Nevada indicating the respective interests of Empire, Woodall and Austin.

Austin made no payment at any time on its note, and never gave any other form of consideration for the aircraft. .

On January 10, 1977 Empire, for a consideration, released Woodall from its "with recourse" obligation and reassigned Empire's interest to Woodall.

On January 20, 1977 and April 7, 1977 the government, having on this record conducted no search of the FAA register, and no search of Nevada state records, filed two tax liens against Austin with the Secretary of State of Nevada, as it is authorized to do under 26 U.S.C. § 6323(f)(1)(A)(ii) and (2)(B).

The government at no time filed anything with the FAA.[2]

On May 9, 1977, with apparent knowledge of the reassignment to Woodall, CIM purchased Woodall's interest in the aircraft. CIM asserted in an affidavit that it searched the FAA register prior to its purchase. It obtained possession of the aircraft in Salt Lake City on or about May 12, 1977.

On May 27, 1977 CIM received a bill of sale from Austin. At no time did Austin have any equity interest in the aircraft whatsoever. Nor did it receive at any time any consideration for the transfer of title in the bill of sale to CIM. Though the bill of sale reflects a consideration, the affidavit record establishes that reflection as a false formalism.

On June 6, 1977, CIM filed an ownership registration certificate with the FAA.

In June 1977, Mr. Carrano, President of Austin Milling Company, requested CIM to allow him personally to use the aircraft for a short period for personal reasons uncon-

nected with the business of Austin. With CIM approval, Carrano had the aircraft flown to New Mexico, where it was to board Mrs. Carrano and some personal possessions for transport to Santa Ana, California. Enroute to Santa Ana, the aircraft developed an oil leak and was forced to land at Riverside, California. CIM was notified of the problem and of the need to fly the aircraft elsewhere for repair.

On August 24, 1977 the government seized the aircraft at Riverside, California, for non-payment of taxes by Austin.

On September 28, 1977, Empire filed with the FAA a notice of the release and reassignment to Woodall it had executed on January 10, 1977.

CIM filed its original complaint on November 14, 1977, praying for a preliminary and permanent injunction against a tax sale of the aircraft and for an order that the aircraft be returned as wrongfully seized. CIM maintained it would suffer irreparable harm if a tax sale were held in that a prospective purchaser, known to CIM, was a foreign business which would remove the aircraft to Japan.

On March 2, 1978, the district court denied injunctive relief, saying it would entertain a government motion to dismiss. The next day the government moved for summary judgment.

On April 25, 1978, CIM paid the full $9,935.17 in delinquent taxes and penalties owed by Austin. The government released its levy and returned the aircraft to CIM.

On May 3, 1978, CIM sought leave to amend its complaint, to add a separate cause of action for refund of wrongfully collected taxes. On the same day, the district court granted the government's March 3 motion for summary judgment, taking no action on CIM's motion to amend.

2. Under 14 C.F.R. § 49.17(a), federal tax liens need not be filed with the FAA. Filing tax liens on aircraft with the FAA would avoid entrapment of even the wary, who rely on the FAA register. That practice might also tend to avoid unnecessary litigation. Though its insistence on filing tax liens only with state authorities forces review of fifty state records for possible tax liens, the government here argues that all interests not filed with the FAA must be declared invalid to obviate a need for searching state records. In all events, nothing here said would preclude a good faith purchaser of an interest filed with the FAA from asserting the invalidity under section 1403 of an unrecorded interest vis-a-vis that purchaser.

On May 16, 1978, the district court filed findings of fact and conclusions of law, and entered judgment for the government. The findings are essentially those listed above. Among the conclusions, those numbered 8–11 and 13 are material to this appeal:

8. The Federal Aviation Act requires that the reassignment of a security interest must be recorded to be valid. 49 U.S.C. § 1403(a)(1), (a)(2) and (c). *See, Feldman v. Chase Manhattan Bank, N.A.,* 368 F.Supp. 1327 (S.D.N.Y.1974), *rev'd on other grounds,* 511 F.2d 468 (2nd Cir. 1975).

9. By failing to record its interest, Woodall became the holder of an unperfected security interest. U.C.C. § 9–302 (3) and (4), 49 U.S.C. § 1403(a)(1), (a)(2) and (3).

10. CIM, the plaintiff herein, as the assignee of Woodall, became entitled to no more right, title or interest than held by its assignor.

11. Any right, title or interest acquired by Woodall through subrogation from Empire Bank was extinguished when the release of Empire Bank's interest in the aircraft was filed on September 28, 1977.

13. The federal tax lien attached to all property interests of Austin, including the aircraft herein in issue. 26 U.S.C. § 6321. The defendant's levy was a valid exercise of its authority to collect unpaid taxes. 26 U.S.C. § 6331.

## Issues

The determinative issue is whether the district court erred in its *Conclusions of Law* 8, 9, 11 and 13.[3] Resolution of that issue involves determination of these sub-issues:

1. *Section 1403.* Are all security interests in aircraft invalid if not recorded under 49 U.S.C. 1403?

2. *Subrogation.* May an assignee who has not filed with the FAA be the subrogee of its assignor who had filed?

3. *Release By Subrogor.* Is a subrogee's interest in an aircraft extinguished when its subrogor files with the FAA a release of the subrogee's obligation to the subrogor?

4. *Wrongful Levy.* Was the levy "wrongful," as defined by 26 U.S.C. § 7426?

## OPINION

### (1) *Section 1403*

■ The purpose of the recording provisions set forth in Section 1403 is to protect persons who have dealt on the faith of the FAA register, as to whom it would be fraud to give effect to unrecorded interests to their detriment. *Marsden v. Southern Flight Service, Inc.,* 227 F.Supp. 411, 415 (M.D.N.C.1961). Protection of a subsequent good faith purchaser of a security interest against nonregistered interest holders thus facilitates stability in a nationwide market for aircraft, a highly mobile product.

■ The government argued below that a security interest "must be recorded to be valid." The district court adopted that view as its *Conclusion 8,* and the government repeats that facile position before us. That statement, however, does not fully accord with the statute. The more complete statement of the law expressed in section 1403(c) reads: "No conveyance or instrument . . . shall be valid . . . against any person other than . . . any person having actual notice thereof, until such conveyance or instrument is filed for recordation. . . ." Nothing in the Act makes all unrecorded interests in aircraft at all times, against all persons, under all circumstances, and for all purposes, invalid solely because they are not recorded. On the contrary, section 1403(c) makes plain that unrecorded interests may under appropriate circumstances be valid, for example against per-

---

**3.** That CIM's interest is that of its assignor Woodall and hence the correctness of Conclusion 10, is undisputed. Accordingly, the interest of Woodall as of May 9, 1977 and Conclusions 8, 9, 11, and 13, are discussed in the opinion. Though error in fundamental Conclusion 8 would render reversal appropriate, we treat all of the contentions raised on this appeal in the interest of judicial economy and in light of the burden upon the district court.

sons who have actual notice thereof. Conclusion of Law 8 is thus an overbroad statement of the law, and is accordingly erroneous as here applied.[4]

That section 1403 is a recording statute, effecting the validity of security interests insofar as necessary to protect a good faith purchaser without notice, and, under normal circumstances governing priority of liens recorded and unrecorded, is further confirmed by section 1406 of the Act.[5] That section describes section 1403 as merely providing for recording, and specifies that the validity of any instrument recordable under section 1403 shall be governed by state law.[6]

4. *Feldman v. Chase Manhattan Bank, N.A.*, 368 F.Supp. 1327 (S.D.N.Y.1974), *rev'd on other grounds*, 511 F.2d 468 (2nd Cir. 1975), cited by the government and the district court, is not to the contrary. Though the district court held the bank's lease assignment invalid because it was not recorded, the Court of Appeals held the bank's assignment valid, applying an equitable estoppel based on Feldman's 30-month acquiescence in the bank's receipt of rents under that assignment. Whether equitable estoppel was in fact "other grounds" is thus questionable, for Feldman's acquiescence presumably involved actual notice and thus removed Feldman from the class protected by section 1403. Moreover, in *Feldman* neither the lease nor its assignment was recorded. Here Empire's interest was on record. A good faith purchaser could not from the records have learned of an encumbrance in *Feldman*, but would have learned of an encumbrance in the present case.

5. § 1406. Law governing validity of certain instrument

The validity of any instrument the recording of which is provided for by section 1403 of this title shall be governed by the laws of the State, District of Columbia, or territory or possession of the United States in which such instrument is delivered, irrespective of the location or the place of delivery of the property which is the subject of such instrument. Where the place of intended delivery of such instrument is specified therein, it shall constitute presumptive evidence that such instrument was delivered at the place so specified.

*See*, also, the legislative history of section 1406, 1964 U.S.Code Cong. and Admin.News, pp. 2319, 2320.

6. CIM cites *Haynes v. General Electric Corp.*, 432 F.Supp. 763 (W.D.Va.1977), *aff'd*, 582 F.2d

All potentially involved states (California, Nevada, Missouri) have adopted the relevant portions of the Uniform Commercial Code (UCC).[7] The government says state law mandates that a security interest in aircraft must be "perfected" by registration under section 1403, relying on:

U.C.C. § 9–302. When Filing Is Required to Perfect Security Interest; Security Interests to Which Filing Provisions of This Article Do Not Apply.

(3) The filing provisions of this Article do not apply to a security interest in property subject to a statute

(a) of the United States which provides for a national registration or filing of all security interests in such property; . . . .

869 (4th Cir. 1978). In that case both competing interests were on file with the FAA. The same was true in *Northern Illinois Corp. v. Bishop Distributing Co.*, 284 F.Supp. 121 (W.D. Mich.1968). The government asserts that section 1406 relates only to determination of the validity of interests which are in fact on file with the FAA. That view rests on the government's basic, and erroneous, premise that no unfiled interests can ever be valid, and would leave no law applicable to unfiled interests. Such a limited view of section 1406 is compelled by neither its language nor its legislative history.

We need not discuss at length the parties' contentions on whether section 1403 "preempts" state law, in whole or in part, respecting interests in aircraft. This court has held that, though section 1403 may govern priority, matters touching validity of interests in aircraft under section 1403 are determinable in reference to state law. *Holiday Airlines Corp. v. Danning*, 620 F.2d 731 (9th Cir. 1980). In *Aircraft Investment Corp. v. Pezzani & Reid Equip. Co.*, 205 F.Supp. 80 (E.D.Mich.1962), the court held erroneous the view that Congress preempted the entire field of conveyancing of interest in aircraft, describing contrary language in *In re Veterans' Air Express Company*, 76 F.Supp. 684 (D.N.J., 1948) as dicta. In *Texas National Bank v. Aufderheide*, 235 F.Supp. 599 (E.D.Ark.1964), *Northern Illinois Corp. v. Bishop Distributing Co.*, 284 F.Supp. 121 (W.D. Mich.1968), and *State Securities Company v. Aviation Enterprises*, 355 F.2d 225 (10th Cir. 1966), the courts recognized section 1403, but resolved questions of validity, actual notice, good faith purchaser status, waiver, and acquiescence under state law.

7. California, U.C.C.A. § 9302; Nevada, 8 Nev. R.S. § 9–302; Missouri, Mo. U.C.C.§ 9–302.

U.C.C. § 9–302 thus compels reference to section 1403 in relation to filing provisions for security interests in aircraft, and renders filing of such interests with state authorities ineffective. It does not, however, compel the interpretation of section 1403 sought here by the government, that is, that no interest in an aircraft can ever be valid against any party for any purpose unless that interest is registered with the FAA. The plain language of section 1403, as discussed above, is to the contrary.

Considerations of equity and statutory purpose compel rejection of the government's either-or approach in this case. At the time the present tax liens were filed, the Nevada and FAA registers gave notice of Empire's outstanding interest as a creditor of the original debtor, Austin. The government's brief states that if the reassignment to Woodall had been on file when the government filed its tax liens "this dispute would not have arisen." But Empire's interest was on file when the government filed its tax liens. No explanation is given or seen as to why Empire's prior filing of its interest, and subrogation of Woodall thereto, should not have the same equitable effect as a filing of the reassignment.

The purpose of section 1403, namely to protect persons who have dealt on the faith of recorded title, is not impeded in this case by holding Woodall's reassigned interest valid and superior, albeit unrecorded. To adopt the government's view, on the other hand, would be to undermine that purpose, by treating section 1403 as a race statute, and by penalizing CIM, an innocent purchaser who apparently dealt on the faith of the FAA register, from which it could not have learned of Austin's tax liability. The government, on the other hand, could have learned from the FAA (and from the Nevada records) of Empire's interest and from Empire of the reassignment to Woodall, before rushing to seizure. A "seize first and determine rights later" practice involves total non-reliance on the FAA register, an aircraft being seizable under that practice regardless of whether any security interests in that aircraft are on file with the FAA.[8] Whatever the necessity or merits of that practice, to adopt the government's view of section 1403 in this case would be to favor the party who totally ignored the FAA register to the detriment of the party who apparently respected it.

Accordingly, Conclusion of Law 8 is in error in its total equation of non-filing with invalidity. Further, the conclusion is simply inapplicable as a basis for decision in this case, where the government is not a purchaser without notice and did not act on the faith of the FAA register.

### (2) Subrogation

■ Federal law, 26 U.S.C. § 6323(i)(2),[9] provides that local law shall govern subrogation for purposes of federal tax liens imposed, as here, under 26 U.S.C. § 6321.

In this case, the "local law" mandated by federal law is U.C.C. § 9–302(2):

> (2) If a secured party assigns a perfected security interest, no filing under this Article is required in order to continue the perfected status of the security interest against creditors of and transferees from the original debtor.[10]

Thus, whatever the effect of non-filing under section 1403 upon others, it is unnecessary that a subsequent assignee of a recorded interest file the assignment to effect priority over creditors of the original debtor. *Anderson,* Uniform Commercial Code 9–302:11.

No persuasive reason is seen or cited why Woodall, as assignee of Empire's then "per-

---

8. And regardless of whether any security interests were, as they were here, on file with state authorities. The government says only that its agent checked the aircraft log and talked to the pilot when it seized the aircraft in Riverside.

9. 26 U.S.C. § 6323
   (i)(2) Subrogation.—Where, under local law, one person is subrogated to the rights of another with respect to a lien or interest, such person shall be subrogated to such rights for purposes of any lien imposed by section 6321 or 6324.

10. California, U.C.C.A. § 9302; Nevada, 8 Nev. R.S. § 9–302; Missouri, Mo. U.C.C. 9–302.

fected" security interest, is not entitled to be subrogated to the rights of Empire, as of the date of the previously recorded underlying assignment to Empire.[11]  Indeed, the government argues, as discussed below, that Woodall's rights "acquired by subrogation" were extinguished.

As an equitable doctrine, subrogation raises considerations of the likelihood of unjust enrichment and the relationship of the parties to a class intended to be protected by a statute.[12]  Subrogation of Woodall produces no likelihood of unjust enrichment of Woodall or CIM.  Failure to subrogate Woodall would, on the other hand, unjustly enrich Austin and the government.  Subrogation protects Woodall and CIM who are within the class of innocent purchasers intended to be protected by the Act.  Failure to subrogate would protect only the government who did not rely on the Act.

The district court, in its Conclusion 9 recognized that Woodall did acquire an interest from Empire, but held that, solely because it failed to record its interest with the FAA, Woodall became the holder of an "unperfected interest."  The interest Woodall acquired by reassignment from Empire was at the time of the reassignment a perfected interest.  When U.C.C. § 9–302(2), is applied, as 26 U.S.C. § 6323(i)(2) directs, no filing was required "to continue the perfected status of the security interest against creditors" of original debtor Austin.  Further, § 9–312(5)(a) gives priority to the interest from the time it was first perfected.  Thus, Woodall and CIM took a perfected interest with priority from the time of Empire's filing.

The government, though relying on state law for certain purposes, asserts that priority of a federal tax lien vis-a-vis a non-federal interest is governed by federal law, citing *United States v. Equitable Life*, 384 U.S. 323, 330–31, 86 S.Ct. 1561, 1565–66, 16 L.Ed.2d 593 (1966);  *United States v. Security Tr. & Sav. Bk.*, 340 U.S. 47, 71 S.Ct. 111, 95 L.Ed. 53 (1950);  *see also, Bank of Nevada v. United States*, 251 F.2d 820 (9th Cir. 1957).  Apparently recognizing that those cases involved facts and laws entirely distinct from those present here, the government cites only section 1403 as the federal law here applicable, and repeats its basic position that no interest in an aircraft can ever be valid if it is not actually recorded with the FAA as provided for in section 1403.  As above indicated, that interpretation of section 1403 is not in accord with its language.

Nor would the government's interpretation accord with the intent of the federal law it cites, for if section 1403 alone be looked to, Woodall's failure to file its reassignment from Empire with the FAA, as above discussed, had no effect upon the government's rights against Austin, and did not convert the perfected interest Woodall acquired into an unperfected interest vis-a-vis all persons.  Whether Woodall's failure to file would under section 1403 render its interest "unperfected" vis-a-vis a tax lien filed against Empire or Woodall, or vis-a-vis a purchaser from Empire without notice of the reassignment to Woodall, or vis-a-vis a purchaser who otherwise dealt on the faith of the FAA register, are questions not before us.

---

11.  The government says Woodall cannot be subrogated because it was "under an obligation" resulting from its "with recourse" assignment to Empire, citing *United States v. Halton Tractor*, 258 F.2d 612 (9th Cir. 1958) and the reference there to subrogation of a person "under no obligation."  The government disregards the immediately ensuing words "who undertakes by agreement with an obligor."  Here there was no agreement of Woodall *with obligor Austin* to pay Austin's debt.  Hence the government's reliance on a single phrase from *Halton* must fail.  Moreover, the general equity rule that volunteer status is not required for subrogation, 83 C.J.S. *Subrogation* § 5 (1953), was not diminished by *Halton*.

12.  Being equitable, subrogation may be applied to keep alive for the benefit of a surety even an obligation satisfied at law.  *Williston on Contracts*, Section 10:856;  *Burgoon v. Lavezzo*, 92 F.2d 726 (D.C.Cir.1937).  Here, however, it is not the "satisfied" obligation of Woodall to Empire that is being kept alive but the continuing and unsatisfied obligation of Austin.  Hence the government's strenuous assertion that Empire's interest was extinguished is irrelevant.

Conclusion 9 is thus erroneous under U.C.C. § 9–302(2) and inapplicable under section 1403.

### (3) Release by Subrogor

■ The district court, in its Conclusion 11, held that whatever interest Woodall "acquired by subrogation from Empire was extinguished" when Empire filed a "release" of its interest with the FAA. The Conclusion focuses exclusively, and erroneously, on Empire's "release," in disregard of Empire's having simultaneously filed a reassignment of its interest to Woodall. The present case is not one in which a single debtor has simply paid its creditor and the creditor has released that debtor's indebtedness. On the contrary, the case is one in which Austin's creditor, Empire, has reassigned its interest to Woodall, releasing its recourse to Woodall in the process. By the reassignment, Woodall became subrogated to Empire's creditor status vis-a-vis Austin. By the release, it was Empire's, not Woodall's, interest that was "extinguished."

This court has long recognized the rights of such subrogees in federal cases *U. S. v. Halton Tractor Company*, 258 F.2d 612 (9th Cir. 1958). The government relies on *Bank of Lexington v. Jack Adams Aircraft Sales Inc.*, 570 F.2d 1220 (5th Cir. 1978).[13] In that case, however, a first bank financed the purchase of aircraft by Adams; a second bank, under a separate agreement, financed a purchase of the aircraft from Adams; the court held that Adams could not resurrect the satisfied interest of the first bank to effect priority over that of the second bank. Here Woodall acted as surety for the obligation of a single purchaser, Austin; there were not two separate agreements with independent obligations, as in *Adams*. In this case there is a single financing agreement, the assignment of which, with recourse, created the dependent obligation of Woodall. When Woodall satisfied that obligation and

Empire reassigned its interest, Woodall's interest in the aircraft, and against Austin, remained what it had been, as was readily discernible from the FAA register. The government's reliance on *Adams* is thus misplaced.

Adoption of the government's "release' position would effectuate neither the purposes nor the objectives of the Act. Neither Woodall nor its purchaser, CIM, could have gained knowledge of the tax liens from reference to the FAA register. When Empire filed its release and reassignment, CIM's certificate of ownership had been on file with the FAA for four months. The government, of course, relied in no manner on the release when it seized the aircraft. To allow Woodall's, and thus CIM's, interest to be extinguished, or otherwise rendered inferior to the tax liens, would not contribute to the aircraft market stability intended by the Act.[14]

Moreover, it would be incongruous to hold that a subrogor may unilaterally, without act or acquiescence of its subrogee, extinguish its subrogee's rights against an original debtor by the mere act of filing a "release" with the FAA. As of September 28, 1977, when the release was filed, Empire had for eight months had no interest whatever in the aircraft. CIM's certificate of ownership had been on file for four months. To declare Woodall's rights against Austin extinguished because Empire filed a release of Empire's rights against Woodall would be unreal and unfair.

Equity thus requires that a subrogor's release and reassignment of a security interest, where the subrogee both satisfied its obligation to the subrogor and reacquired its interest in the underlying obligation of the original debtor, shall not be held to have extinguished the subrogee's interest. Accordingly, Conclusion of Law 11 was in this case erroneous.

---

13. CIM relies on the same authority for its holding that state law governs priorities between lienholders and the viability of the assignment of security interests in aircraft.

14. It was at IRS request that Congress exempted tax liens from any requirement of filing with the FAA. If tax liens on aircraft are found inferior to interests subrogated from interests filed with the FAA prior to state filing of the tax liens, IRS cannot be heard to complain.

*(4) Wrongful Levy*

■ 26 U.S.C. § 7426 of the Internal Revenue Code provides, in pertinent part:

§ 7426. Civil actions by persons other than taxpayers

Actions permitted

(1) *Wrongful levy.* If a levy has been made on property or property has been sold pursuant to a levy, any person (other than the person against whom is assessed the tax out of which such levy arose) who claims an interest in or lien on such property and that such property was wrongfully levied upon may bring a civil action against the United States in a district court of the United States. Such action may be brought without regard to whether such property has been surrendered to or sold by the Secretary.

. . . . .

(b) Adjudication. The district court shall have jurisdiction to grant only such of the following forms of relief as may be appropriate in the circumstances:

. . . . .

(2) If the court determines that such property has been wrongfully levied upon, the court may—

. . . . .

(B) grant a judgment for the amount of money levied upon; . . . .

The definition of a "wrongful" levy for purposes of 26 U.S.C. § 7426 is found at Section 301.7426–1(b)(1) of the Federal Income Tax Regulations:

For purposes of this paragraph, a levy is wrongful against a person . . . if (a) . . . (b) the levy is upon property in which the taxpayer had no interest at the time the lien arose or thereafter, or (c) . . . or (d) the levy or sale pursuant to levy will or does effectively destroy or otherwise ir-reparably injure such person's interest in the property which is senior to the Federal tax lien.

Unchallenged before the district court, the affidavit of Austin's President, Vincent Caranno, stated that Austin had no equitable interest whatsoever in the aircraft. That Austin never made any payment of any kind for the aircraft must also be accepted as fact.

The government maintained below that Austin's title, as reflected in the FAA and Nevada registers, was an interest sufficient in itself to sustain the levy. The government ignores Empire's interest, also reflected on the same registers when it filed its tax liens, and does not repeat its reliance on Austin's naked title on this appeal.[15] The text of the government's appeal brief speaks of Austin's interest in this single sentence:

In the first instance, it is questionable whether the levy made in this case by the Government was "wrongful" (a condition precedent to jurisdiction), in that the facts herein strongly suggest that the taxpayer had an interest in the aircraft in excess of the Government's claims and it is almost axiomatic that a levy can be wrongful only when it is made on property that is not the taxpayer's.[16]

■ Summary judgment approving a levy cannot be upheld where it is "questionable" whether that levy was wrongful, or where the facts merely "suggest" that the taxpayer had an interest. From the facts necessarily accepted on this appeal, taxpayer Austin had no interest on which a levy would be proper. Hence the levy here was wrongful under section 301.7426–1(b)(1)(b) of the Federal Income Tax Regulations.

Further, the supplemental affidavit of Craig Hunter, President of CIM, must be taken as establishing that a tax sale of the aircraft would have effectively destroyed

**15.** It is well that the assertion is before us abandoned, for naked title alone will not support a government seizure in the face of valid equitable interests determinable or appearing at the time on applicable registers. *United States v. J. A. White,* 66–1 U.S.T.C. TP 9249; *Hobson v. United States,* 168 F.Supp. 117 (E.D. Mich.1958); *United States v. Johnson,* 200 F.Supp. 589 (N.D.Ariz.1961).

**16.** The remainder of the government's brief is devoted primarily to the circumstance that Woodall's interest was not filed with the FAA.

CIM's interest in the aircraft. That interest, as above indicated, was entitled to the priority of the recorded interest of Empire as against creditors of Austin. It was therefore senior to the Federal tax lien, and the levy was wrongful on the additional ground set forth at section 301.7426–1(b)(1)(d) of the Federal Income Tax Regulations.

Accordingly, Conclusion of Law 13, describing Austin's interests as including "the aircraft" and holding the levy a valid exercise of the government's authority to collect unpaid taxes of Austin is on this record erroneous.

### Remand

■ As above set forth, the necessarily accepted facts of record on this appeal establish a lack of interest of any kind on the part of Austin in the seized aircraft. That fact alone would require us to reverse and direct the district court to enter summary judgment for CIM. We remand, however, to permit the district court to rule on CIM's motion to amend its complaint, in particular to afford CIM the opportunity to raise the issue of the taxes it paid the government after the complaint was filed. In addition, the government asserts in a footnote to its brief that Woodall valued the aircraft at $41,000 when it was sold to CIM, making the $3,906.66 appreciation the property of Austin, the then-title-holder-of-record. The same footnote says Austin transferred its title by bill of sale to CIM for a computer of unspecified value. The government then says that "aside from any question of priority" its levy attached at least in part to this "property" of Austin that "quite conceivably" exceeded the amount of the tax liens. Though the government's assertions are speculative, and are at least in part improperly stated as established facts, CIM expresses confidence in its ability to establish that Austin never held any levy-justifying interest in the aircraft and invites "if necessary" a remand for trial or hearing to determine that question.

The government does not explain how Austin's entitlement, if any, to the $3,906.66 appreciation apparently received by Woodall, or Austin's apparent receipt of a computer, would entitle it to seize the aircraft, or to collect Austin's taxes from CIM. Nor does it explain how CIM's interest in the aircraft, held here superior to the tax liens, could be expunged by proof that Austin received something. Nonetheless, if the issue exists, the burden of showing absence of taxpayer interest in the seized property is upon CIM. If there be a dispute of material fact related to Austin's interest in the aircraft, and the government is convinced that a favorable resolution of that dispute, at trial or a hearing, would require judgment in its favor "aside from any question of priority," we are constrained to grant a remand for the limited purpose of permitting that opportunity for the government to further attempt retention of the taxes due from Austin and collected from CIM.

### Conclusion

Because the crucial Conclusions of Law 8, 9, 11, and 13 were erroneous, the summary judgment granted below must be and is reversed. A security interest in an aircraft is not necessarily invalid against all parties for all purposes and under all conditions solely because it is not filed with the FAA. A non-recording assignee of a recorded security interest in an aircraft may be subrogated, when equity so requires, to the recorded interest of its assignor. Reassignment of a subrogor's interest to its subrogee, and release of the subrogee's obligation to the subrogor, do not of themselves extinguish the subrogee's security interest in the property. CIM, through Woodall, was subrogated to the senior recorded interest of Empire. On this record, the levy was wrongful because Austin had no interest in the seized property and because the seizure would have destroyed CIM's senior lien. In view of apparently disputed fact issues, the case is remanded for the limited purpose of enabling a determination, if necessary, of whether Austin held any interest in the aircraft sufficient to justify the levy, notwithstanding CIM's senior lien.