**In re AUTO–TRAIN CORPORATION, a Florida Corporation, Debtor.**

**Murray DRABKIN, Trustee of Auto-Train Corporation, Plaintiff,**

**v.**

**CONTINENTAL ILLINOIS BANK AND TRUST COMPANY OF CHICAGO, Continental Illinois Leasing Corporation, Defendants.**

**Bankruptcy No. 80–00391.
Adv. No. 89–0090.**

United States Bankruptcy Court,
District of Columbia.

Feb. 19, 1981.

Murray Drabkin, Barry J. Dichter, Webster & Sheffield, Charles A. Docter, Docter,

Docter & Salus, Washington, D. C., for plaintiff Auto-Train (Trustee).

Robert O. Tyler, Williams, Myers & Quiggle, Washington, D. C., for defendant Continental Ill.

## MEMORANDUM OPINION

ROGER M. WHELAN, Bankruptcy Judge.

This pending motion for partial summary judgment filed by Continental Illinois Bank and Trust Company of Chicago and Continental Illinois Leasing Corporation (hereinafter referred to as "Continental"[1]) calls upon the Court to determine one key issue—assuming that Continental's claimed interest in the rolling stock of Auto-Train is that of a secured creditor, and not that of a lessor, has there been proper perfection of their security interest under Article 9 of the Uniform Commercial Code?[2] Because the controlling facts are not in dispute, and because the Court concludes that Continental's security interest in Auto-Train's rolling stock was properly perfected by central filing with the Interstate Commerce Commission, pursuant to the requirements of Title 49 U.S.C. § 20c, recodified in 1978 as 49 U.S.C. § 11303, the Court grants the de-

fendant's motion for partial summary judgment.[3]

The relevant facts, which are not in dispute, demonstrate that between the years 1971 through 1974 Auto-Train and the defendants entered into several equipment lease agreements, whereby designated locomotives and railway passenger cars were provided to Auto-Train under "lease." (See Plaintiff's complaint and Defendant's answer, paragraphs 1 through 8, inclusive). The Trustee for Auto-Train asserts that these equipment lease agreements are, in substance, security agreements and not "true lease agreements." (Paragraph 9 of trustee's complaint.) The Trustee further asserts that because the agreements are, in fact, security agreements, they have not been properly perfected pursuant to the provisions of Article 9 of the U.C.C. (U.C.C. § 9–302) and hence, are voidable by the Trustee pursuant to the provisions of 11 U.S.C. § 544(a).[4] The defendants solely for purposes of, and in connection with, the pending motion for summary judgment, contend that even assuming these agreements are security agreements, and not leases,[5] there has been proper perfection pursuant to Title 49 § 20c (now recodified

1. The original motion, filed by Continental in this proceeding, moves for partial judgment on the pleadings, as well as a partial motion for summary judgment, but based upon the fact that there are matters dehors the pleadings, which the Court has been called upon to consider, namely, financing statements filed by other parties which were introduced by Trustee's counsel, the Court will treat this motion as one property filed for summary judgment pursuant to Bankruptcy Rule 756.

2. Throughout this opinion, the Court uses the citations to the regularly cited sections of the Uniform Commercial Code. The same pertinent sections of the Uniform Commercial Code, as cited in this opinion, are found in D.C.Code § 28:9.

3. On May 28, 1980, the defendants in this action, Continental, filed a civil action in the United States District Court for the Northern District of Illinois, Eastern Division, (Case captioned *Continental Illinois National Bank and Trust Company of Chicago and Continental Illinois Leasing Corporation v. Auto-Train Corporation, a Florida corporation,* Civil Action 80–C–2710) seeking an injunction against the use

of, as well as the return of, the locomotives and railroad cars presently utilized by Auto-Train in connection with its railroad operations. By reason of Auto-Train's answer, which sets forth several defenses, including affirmative defenses of waiver and laches, the remaining issues will be determined by this Court as a result of a removal action previously instituted by the Trustee in which an order of transfer, dated January 30, 1981, was entered by Bankruptcy Judge Eisen.

4. 11 U.S.C. § 544(a) provides the Trustee with the rights of an ideal hypothetical judgment lien creditor. Accordingly, if these are security agreements and not leases, and if they were not properly perfected as of the date of bankruptcy (September 8, 1980), it is clear that the Trustee-in-Bankruptcy has the right to void such unperfected security interests. *See Lewis v. Manufacturers National Bank,* 364 U.S. 603, 81 S.Ct. 347, 5 L.Ed.2d 323 (1961).

5. If the agreements are, in fact, true lease agreements, then they are not within the scope of Article 9. [*See* U.C.C. § 9–102(2)]

as Title 49–11303) and that perfection is not mandated or required because U.C.C. § 9–302(3) expressly excepts such "federal transactions."

While it is clear that U.C.C. § 9–302 requires that a ". . . financing statements must be filed to perfect all security interests . . .", Subsection 3 of this same statute clearly excepts ". . . a security interest in property subject to a statute (a) of the United States which provides for a national registration of filing of all security interests in such property; or . . ." The official comment # 8 for this section makes it clear that:

"Subsection (3) exempts from the filing provisions of this Article transactions as to which an adequate system of filing, state or federal, has been set up outside this Article and subsection (4) makes clear that when such a system exists perfection of a relevant security interest can be had only through compliance with that system (i. e., filing under this Article is not a permissible alternative).

"Examples of the type of federal statute referred to in subsection (3)(2) are the provisions of 17 U.S.C. §§ 28, 30 (copyrights), 49 U.S.C. § 523 (aircraft), 49 U.S.C. § 20(c) (railroads). . . ."

The controlling federal statute, Title 49 U.S.C. § 20c, in effect at the time that these agreements were executed, provides for such perfection by the provisions of a nationwide filing system.[6] The Trustee, however, draws the Court's attention to the language ". . . may be filed . . ." and claims that because this constitutes permissive recordation, that ". . . as 49 U.S.C. § 20(c) clearly does not mandate national registration of railroad rolling stock as the sole means of perfecting such interests, D.C.Code § 28:9–302(3) does not exempt interests in such property from the perfection requirements of Article 9 of the Uniform Commercial Code." (See page 3 of Trustee's memorandum.) This artful argument, however, ignores the clear intent of Congress in enacting the subject legislation. It is clear that central filing for "all such railroad equipment obligations . . ." ". . . would fulfill the legal requirements, and would protect the debtor, creditor, and general public." (S.Rep.No.1676, 82nd Cong., 2nd Sess., reprinted in [1952] *U.S.Code Cong. & Ad.News* 2275, 2276.) While the use of one word, "may", creates the impression that such filing is permissive, the statutory language must be construed in its entirety together with the express legislative intent. C. Dallas Sands, *Statutes and Statutory Construction, A Revision of the Third Edition of Sutherland Statutory Construction,* § 57.03 (3rd ed. 1973). Such an interpretation of 49 U.S.C. § 20c, as well as its successor statute, 49 U.S.C. § 11303(a), is in accord with such intent and is consistent with the plain language of the statute which provides that when such "lease" is filed ". . . such instrument or other document need not be otherwise filed, deposited, registered or recorded under the provisions of any other law of the United States of America, or any state (or public political subdivision thereof), territory, . . ." *See* Title 49 U.S.C. § 20c. Accordingly, the

---

**6.** 49 U.S.C. § 20c creates a separate filing system in these words:

"Any mortgage, lease, equipment trust agreement, conditional sale agreement, or other instrument evidencing the mortgage, lease, conditional sale, or bailment of railroad cars, locomotives, or other rolling stock used or intended for use in connection with interstate commerce . . . may be filed with the Commission . . . and any such instrument or other document, when so filed with the Commission, shall constitute notice to and shall be valid and enforceable against all persons including, without limitation, any . . . trustee in bankruptcy of, the mortgagor, buyer, lessee, or bailee of the equipment covered thereby, . . . and such instrument or other document need not be otherwise filed, deposited, registered or recorded under the provisions of any other law of the United States of America, or any State (or political subdivision thereof), territory, district or possession thereof, respecting the filing, deposit, registration, or recordation of such instrument or document. . . ."

Furthermore, Title 49 § 11303(a), its successor statute, enacted in 1978, tracks its predecessor, and provides not only for central filing with the Interstate Commerce Commission, but states that ". . . when filed, under this section, that document is notice to, and enforceable against, *all* persons." [emphasis added]

language, construed in proper context, requires that the Court recognize the purpose and rationale for such central filing—namely, that by the nature of the collateral involved, central filing adequately protects creditor interests in such collateral. Since the movement of rolling stock across various state lines is no different than the flights of commercial aircraft across state lines, or the passage of ships in maritime traffic, the filing requirements for rolling stock should be no different than for other forms of transportation collateral. C. f., *Feldman v. Chase Manhattan Bank*, 368 F.Supp. 1327 (S.D.N.Y.1974) *rev'd. on other grounds*, 511 F.2d 468 (2nd Cir. 1975).

The Trustee further argues that " ... the filing of security interests in railroad rolling stocks ..." is mandated by the provisions of U.C.C. § 9–103(2) which states:

> "If the chief place of business of a debtor is in the District, this article governs the validity and perfection of a security interest and the possibility and effect of proper filing with regard to ... goods of a type which are normally used in more than one jurisdiction (such as automotive equipment, rolling stock, ...) if such goods are classified as equipment or classified as inventory by reason of their being leased by the debtor to others."
> Defendant's Brief at page 3.

What this argument overlooks is that the general provisions of the Uniform Commercial Code, dealing with such matters as priorities and rights on default (outside of the bankruptcy context, of course), are applicable to the transaction at issue, but the specific requirements for filing are not applicable because of the specific exemption language found in UCC § 9–302(3) of the Code.

*See*: J. White and R. Summers, *Uniform Commercial Code*, Sec. 22–11, p. 898 (2d ed. 1980).[7] Furthermore, although "rolling stock" is expressly included within the type of collateral mentioned in this section, namely, UCC § 9–103(2), this section of the Uniform Commercial Code deals almost exclusively with conflicts of law issues arising under the Code. As stated above, the specific filing requirements for interests arising under the U.C.C. are provided for specifically within the parameters of U.C.C. § 9–302.

Wherefore, based on the undisputed fact that the defendants, Continental, have properly recorded the subject equipment lease agreements with the Interstate Commerce Commission, as required by 49 U.S.C. § 20c and because the filing of a financing statement is not required pursuant to U.C.C. § 9–302, this Court concludes that the interest of the defendants is properly perfected as against the Trustee in this proceeding. Counsel for the defendants, Continental, will submit an appropriate order to this Court within two days of the date of this Memorandum Opinion.

IT IS SO ORDERED.

---

**7.** This is further clear when reference is made to the exceptions set forth in UCC § 9–104 which, until amendments enacted in 1972, expressly excluded " ... a security interest subject ... to an equipment trust covering railway rolling stock; or ..." While the instruments in this proceeding are not equipment trust agreements, the District of Columbia Code still maintains this exception. In *Secured Transactions Under the UCC*, Ray Henson, Section 3–2, page 24, West Publishing Co., (1979), this persuasive explanation is provided:

"The 1962 Code excluded equipment trusts covering railway rolling stock but this exclusion was deleted in the 1972 Code. The only reason for the original exemption of equipment trusts was pressure from some railway interests. In substance, rather than form, equipment trusts are substantially similar to conditional sales of rolling stock, which have always been covered by the Code, and in all cases, filing is presumably required by Section 20(c) of the Interstate Commerce Act." (footnote omitted)