**In re AIR VERMONT, INC., North Atlantic Airlines, Inc., Debtors.**

**Bankruptcy Nos. 84–00019, 84–00017.**

United States Bankruptcy Court, D. Vermont.

May 17, 1984.

Samuel H. Press, Washington, D.C., for California Chieftain.

Joseph C. Palmisano, Barre, Vt., for debtors.

Philip D. Saxer, and Douglas J. Wolinsky, Burlington, Vt., for Gene R. Kazlow.

## MEMORANDUM AND ORDER

CHARLES J. MARRO, Bankruptcy Judge.

The matter comes before the court on the motion of California Chieftain (Chief-

tain), a secured creditor, for the abandonment of property of the estate.

## BACKGROUND

The debtor, Air Vermont, Inc., (Air Vermont) commenced business in September 1981 as a commuter airline operating from the International Airport at South Burlington, Vermont, to various points primarily in the Northeast. Air Vermont grew rapidly in 1982 and 1983, and purchased or leased many aircraft. Financially overextended at year end 1983, Air Vermont filed a petition for relief under chapter 11 of the Bankruptcy Code (Code) on January 31, 1984. Also on January 31, 1984, Air Vermont filed an emergency motion to permit it to incur debt with certain lenders known as VCL Partners (VCL), who proposed to fund Air Vermont's post-petition operations if any monies VCL advanced were given super priority over other administrative expenses. This motion was granted.

On February 2, 1984, upon application of the debtor, the court approved the employment of Air Vermont Management Company, a management team selected by VCL, to resume operation of the debtor airline which operations had been suspend for a period prior to the filing of the petition for relief. Upon taking control, the management team reduced the number of scheduled flights of the airline and took other steps to reform operations. After a short period of operation, however, the management team determined that an economically viable operation of the business probably could not be achieved. It was in this context that on March 8, 1984 Chieftain filed its motion for abandonment of aircraft be the debtor in possession.

On March 12, 1984, Air Vermont filed a disclosure statement and plan which proposed an orderly liquidation- of the business. Also on March 12 a hearing was held on Chieftain's motion for compulsory abandonment.

On March 13, 1984, the court authorized Chieftain to take possession of the transportation equipment it sought to repossess. In the order the court reserved rights to the debtor in the event that Chieftain should fail to document that it had a perfected security interest in the subject aircraft. On the basis of such documentation as Chieftain subsequently supplied, Air Vermont in timely fashion moved the court to vacate its order of March 13 entered pursuant to Chieftain's motion for abandonment.

On April 13 a conference was held on Air Vermont's motion to vacate. The court granted Air Vermont's motion on April 14, 1984. The facts are set forth below.

## FACTS

Chieftain sold the Piper Navajo aircraft to Air Vermont under a conditional sales contract intended to have the effect of security. The contract, executed on April 27, 1982, includes the following terms:

*Conditional Sale-Title:* The sale of the Aircraft... is conditional only, and legal title to such Aircraft shall remain in SELLERS until the entire purchase price ... has been paid in full... Equitable title to said Aircraft shall be deemed to pass from SELLERS to Buyer as a result of the within Agreement, and said Aircraft shall be registered with the Federal Aviation Administration in the name of BUYER concurrently with the filing of the original of the within Contract with said Federal Aviation Administration.

*Sale or Assignment by Buyer:* The within Agreement shall be binding on both BUYER and SELLERS and their respective successors and assigns. However, BUYER may not sell the subject Aircraft or assign any of his rights under this Agreement without first eliminating his obligation to SELLERS...

*Default:* In the event that BUYER should be in default under any of his obligations under the terms hereof, then SELLERS may, at their option, retake possession of the Aircraft and re-sell same for benefit of BUYER...

The Navajo was never registered in the name of Air Vermont with the FAA, nor was any copy of the instant contract filed with the FAA.

At the time of the filing of the petition for relief, Air Vermont had defaulted on payments under the contract. As of the sixty-first day after the filing of the petition, Air Vermont was still in default, having neither cured nor acted to cure the pre-petition default.

At the time of the filing of the petition for relief Air Vermont was in possession of the Navajo. Air Vermont surrendered possession of the Navajo to Chieftain pursuant to the order of the court of March 13, 1984, which order granted Chieftain a right of possession subject to such rights as the debtor in possession may have in the event that the security interest under the instant conditional sales contract were not a perfected security interest.

The Navajo is a civil aircraft of the United States.

## DISCUSSION

Chieftain has conceded that it never filed the conditional sales contract in the office of the Federal Aviation Administration. Such a contract involving civil aircraft is within the purview of the Federal Aviation Act. 49 U.S.C. § 1301(19). Further, under 49 U.S.C. § 1403(a) the Administrator [Secretary of the Treasury] shall establish and maintain a system for the recording of, inter alia, (1) Any conveyance which affects the title to or any interest in, any civil aircraft of the United States; (2) Any ... contract of conditional sale or other instrument executed for security purposes ... which affects the title to, or any interest in, any specifically identified aircraft engine or engines ...

The procedure for the recording of aircraft title and security documents is prescribed by 14 CFR Part 49:11 which reads as follows:

"To be eligible for recording, a conveyance must be mailed to the FAA Aircraft Registry, Department of Transportation, Post Office Box 25504, Oklahoma City, Oklahoma 73125."

Subsection (c) of Section 1403 provides that no conveyance or instrument the recording of which is provided for by section 503(a) [subsec. (a) of this section] shall be valid in respect of such aircraft, aircraft engines—against any person other than the person by whom the conveyance or other instrument is given—or any person having actual knowledge thereof, until such conveyance or other instrument is filed for recordation in the office of the Administrator [Secretary of Transportation].

The requirements as to recording prescribed by the Federal Aviation Act; i.e., 49 U.S.C. § 1402 and § 1403, have pre-empted the Uniform Commercial Code and other state filing requirements. See § 49 U.S. C.S. page 467 et sequi—Interpretive Notes and Decisions—Filing System and cases cited under this annotation. Chieftain recognized the pre-emptive effect of the FAA recordation system as to civil aircraft by the following language contained in the contract under "Conditional Sale-Title:"

"...said Aircraft shall be registered with the Federal Aviation Administration in the name of BUYER concurrently with the filing of the original of the written Contract with said Federal Aviation Administration."

The crucial time for determining the rights of Chieftain as a conditional vendor and of the debtor in possession is the date of the filing of the petition for relief which in this case occurred on January 31, 1984. It is on this date that an estate is created and it includes, among other things, "all legal or equitable interests of the debtor in property as of the commencement of the case." § 541(a)(1) of the Bankruptcy Code. Likewise, it is on this date that the trustee, as well as the debtor in possession by virtue of § 1107, becomes a hypothetical lien creditor. § 544(a)(1) of the Code.

██ Chieftain, having failed to perfect its security interest acquired under the conditional sales contract, its rights are subordinate to those of the debtor in possession as a judicial lien creditor. *In re O.P.M. Leasing Services, Inc.* (Bkrtcy.S.D.N.Y. 1982) 23 B.R. 104, 116; *In re Jerome* (Bkrtcy.D.Vt.1983) 31 B.R. 266.

It is in this posture as the holder of an unperfected security interest that Chieftain seeks to obtain possession of the aircraft

by invoking § 1110 of the Bankruptcy Code. The pertinent part of this section provides:

The right of a ... conditional vendor of ... aircraft ... or vessels of the United States ... that are ... conditionally sold to, a debtor that is an air carrier ... or a water carrier ... to take possession of such equipment in compliance with the provisions of a ... conditional sales contract ... is not affected by section 362 or 363 of this title or by the power of the court to enjoin such taking possession unless __ (Underscoring supplied.)

(1) before 60 days after the date of the order for relief ... the trustee [debtor in possession, See, Code § 1107(a)] agrees to perform all obligations ... that become due on or after such date under such ... conditional sale contract ... and

(2) any default under such ... conditional sale contract ...

(A) that occurred before such date is cured before the expiration of such 60-day period; and

(B) that occurs after such date is cured before the latter of __

(i) 30 days after the date of such default; and

(ii) the expiration of such 60-day period.

This section does not extend to Chieftain as a conditional vendor the privilege of disregarding the full impact of 49 U.S.C. § 1403 which, in effect requires perfection of its security interest if it is to prevail over the rights of the debtor in possession as a hypothetical lien creditor. On the contrary Chieftain must still establish that it has a vested right to possession by perfection of its security interest before it may circumvent the automatic stay under § 362 in the process of obtaining possession of the aircraft. In sum, § 1110 presupposes that a conditional vendor such as Chieftain holds a perfected security interest. There is nothing in this statute to indicate that the legislative intent of Congress was to repeal the recording requirements of 49 U.S.C. § 1403. On the contrary the legislative history indicates that § 1110 merely overrides the automatic stay or any power of the court to enjoin taking of possession of certain leased, *conditionally sold* or liened equipment unless the trustee (also applies to debtor in possession) agrees to perform the debtor's obligations and cures all prior defaults (other than defaults under ipso facto or bankruptcy clauses) within 60 days after the order for relief. [House Report No. 95–595, 95th Cong. 1st Sess. 405 (1977); Senate Report No. 95–989m 95th Cong. 2d Sess. 116 (1978), U.S. Code Cong. & Admin. News 1978, p. 5787.] It is also pointed out in the legislative history that this section protects a limited class of financiers of aircraft and vessels and is intended to be narrowly construed to prevent secured parties or lessors from gaining the protection of the section unless the interest of such lessor or secured party is explicitly therein enumerated. 5 Collier 15th Ed. 1110–23, § 1110.01[d].

The legislative history does not stand for the proposition that the holder of an unperfected security interest in aircraft or vessels is to be afforded the same or more rights than are available to secured creditors holding perfected security interests. Like Code sections 361 through 365, § 1110 contemplates relief only for holders of perfected security interests. This Code section merely operates as an exception to the automatic stay of Code § 362 and applies to a narrow class of creditors in a Chapter 11 case. *In re Airlift International, Inc.* (Bkrtcy.S.D.Fla.1982) 26 B.R. 61, 63.

Congress, in enacting Code § 1110, did not intend to pre-empt § 544 which gives to the trustee (the debtor in possession under § 1107) the status of a judicial lien creditor who may avoid an unperfected security interest. § 1110 makes no reference to § 544 but it does specifically state that the right of a conditional vendor to take possession "is not affected by section 362 or 363 of this title ..." Had there been an intent to abrogate the effect of § 544 the language of § 1110 would have been explicit and the wording would have included section 544 and the pertinent part thereof would have read "is not affected by section 362, 363 or *544...*" Underscoring supplied. The maxim "Expressio unius est

exclusio alterius" translated to "The expression of one thing is the exclusion of another" applies. Under this maxim since sections 362 and 363 were specified in § 1110 as exceptions the only fair assumption is that all other exceptions, including § 544, are excluded.

It has generally been held that if a creditor holding a security interest in aircraft does not record the security instrument with the Federal Aviation Administration pursuant to 49 U.S.C. § 1403 his security interest is unperfected and is subordinate to the rights of a trustee (also a debtor in possession). *In re Pegasus International Travel Club* (Bkrtcy.M.D.Pa. 1981), 15 B.R. 842; *Feldman v. First National Bank* (U.S.Dist.Court S.D.N.Y., 1974), 13 U.C.C. Rep.Ser. 1141. For reasons hereinabove stated Code § 1110 does not change this result and Chieftain is not entitled to any preferential treatment over any other secured creditors who have not properly recorded their security agreements or conditional sales contracts.

The court is impressed with Chieftain's ingenious approach in attempting to obtain possession of the aircraft but it is not convinced that it is legally sound and is entitled to approval.

The Court has been made aware of a possible interest in the aircraft held by Bank of America by virtue of prior financing extended by it to a former owner. However, Bank of America is not a party to this proceeding and its rights, if any, have not been established. For these reasons they are not now entitled to consideration.

### ORDER

Based upon the foregoing, the Motion of Chieftain to abandon property, filed March 8, 1984, is DENIED.