In re **CONTINENTAL AIRLINES CORPORATION, Continental Air Lines, Inc., Texas International Airlines, Inc., Txia Holdings Corporation, Debtors.**

**SWISS AIR TRANSPORT COMPANY, LTD., Plaintiff,**

v.

**TEXAS INTERNATIONAL AIRLINES, INC., TXIA Holdings Corporation, Defendants.**

**Bankruptcy No. 83–04019–5. Adv. No. 84–0289–H1.**

United States Bankruptcy Court, S.D. Texas, Houston Division.

Aug. 12, 1985.

William A. Durham, Houston, Tex., Thomas J. Whalen, Condon & Forsyth, Washington, D.C., for plaintiff.

Bruce R. Zirinsky, Jeff Friedman, Weil, Gotshal & Manges, New York City, for defendants.

## MEMORANDUM OPINION AND ORDER

T. GLOVER ROBERTS, Bankruptcy Judge.

This cause was brought on for hearing before this Court on a Complaint by Swiss Air Transport Company, Ltd. seeking a declaratory judgment that its rights in five DC–9–32 aircraft owned by TXIA Holdings Corporation, a debtor in possession in the consolidated Continental filings, are subject to the provisions of section 1110 of the Bankruptcy Code, and on a subsequently filed motion for relief from the automatic stay pursuant to Section 362 of the Bankruptcy Code. Based upon the stipulations, the hearing on April 22, 1985, and upon submitted briefs, the Court finds as follows:

## FINDINGS OF FACT

The Debtors and two affiliated corporations (collectively, "Continental") filed petitions under chapter 11 of title 11, United States Code on September 24, 1983. The Debtors have continued to operate their business as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. The principal business of Continental is the operation of an integrated airline for the transportation by air of persons, property and mail and scheduled and chartered services. Continental also engages in the business of contract aircraft maintenance and provides training and ground handling services for other air carriers.

The Aircraft are used by TI and CAL in the day-to-day operation of its business. Additionally, the parties stipulated that the Aircraft are necessary to an effective reorganization of TI and Holdings, TI is using the planes in its day-to-day operations to generate revenue, and that Holdings relies on the lease payments from TI to pay Holdings' obligations to its creditors, including, without limitation, Swissair and various subsidiaries of TI.

By complaint dated March 7, 1984 (the "Complaint"), plaintiff Swiss Air Transport Company, Ltd. ("Swissair") sought a declaratory judgment that its interests in five DC–9–32 aircraft owned by TXIA Holding Corporation—with Federal Aviation Administration ("FFA") registration numbers

N531–TX, N532–TX, N533–TX, N534–TX and N538–TX respectively (individually and collectively, the "Aircraft")—are subject to the provisions of section 1110 of the Bankruptcy Code and that Swissair is entitled to repossess the Aircraft. The Complaint also alleged that Swissair was undersecured and sought adequate protection pending the Court's decision as to the applicability of section 1110 and in the event the Court denied section 1110 rights to Swissair. By motion dated September 14, 1984 the "Stay Motion" Swissair requested relief from the automatic stay pursuant to section 362 of the Bankruptcy Code with regard to Aircraft N531–TX, N532–TX and N533–TX, alleging a lack of adequate protection. At the Hearing (as defined below), Swissair confirmed that it seeks further adequate protection solely in respect of the three Aircraft that are the subject of the Stay Motion. A combined hearing on the Complaint and the Stay Motion was held before this Court on April 22–24, 1985 (the "Hearing"). A separate order relative to the § 362 automatic stay is being entered in this matter.

Pursuant to an Aircraft Purchase Agreement between TI and Swissair dated September 11, 1980, Swissair agreed to sell 15 DC–9–32 aircraft (including the Aircraft) to TI at the following base purchase prices: (a) the first five (the "First Set") at $5.2 million each, (b) the second five (the "Second Set") at $6.2 million each, and (c) the last five at $6.3 million each. At the same time as the execution of the Aircraft Purchase Agreement, Swissair and TI executed an addendum thereto dated September 11, 1980 (the "Financing Agreement") pursuant to which Swissair agreed to finance TI's purchase of up to five of the fifteen aircraft on the condition that at least two of the loans would be Swiss francs. The financing was provided by Swissair in connection with the delivery of the Second Set.

The Aircraft Purchase Agreement provided that the agreement may, "without the consent of Swissair, be assigned in whole or in part to a company (or companies) which is a parent, subsidiary or sister company of Texas International. Texas International or its parent company will unconditionally guarantee the performance the (sic) obligations of any such assignee." Purchase Agreement p. 9.

The Financing Agreement provided that, "At the time of closing, Texas International agrees to execute a first rank Chattel Mortgage ... with respect to each aircraft hereunder which shall create a purchase money security interest in the aircraft and engines in favour of Swissair and agrees to execute such further documents necessary to permit the filing and recording of such Chattel Mortgages ..." Financing Agreement p. 4.

The Aircraft Purchase Agreement provides that all modifications thereto are to be in writing.

Texas International assigned its rights in the Aircraft Purchase Agreement to TXIA Holdings Corporation (Holdings), a wholly owned subsidiary of Texas International, on June 16, 1981, with respect to the three aircraft financed by U.S. dollars, and on November 19, 1981, with respect to the two aircraft financed in Swiss francs. Under the Assignments, Holdings agreed to be bound by the Purchase Agreement in all respects relating to such financing and to perform all of the obligations formerly to be performed by the assignor in relation to the financings.

Aircraft N531TX, N532TX, N533TX and N534TX were sold and delivered by Swissair to TI free and clear of any lien by Swissair prior to the financing of any aircraft by Swissair. (TI granted Chase a mortgage on the four aircraft when they were initially delivered to TI. Chase released its lien in connection with the Swissair financing closings.) At each of the first four Swissair financing closings, in simultaneous transactions, TI sold one of the four previously delivered aircraft to Holdings (TI's wholly-owned subsidiary). Holdings, in turn, leased the aircraft back to TI and granted a security interest in the aircraft to Swissair to secure one of Swissair's approximately $6 million loans to Holdings. In connection with each closing,

Holdings also borrowed approximately $1.5 million from one of two TI Netherlands Antilles subsidiaries (the "N.V. Subsidiaries") in order to enable Holdings to pay TI for the aircraft. The loans from the N.V. Subsidiaries were secured with second liens on the aircraft and collateral assignments of the leases between Holdings and TI. The structure and documentation of each of the above four transactions was the same except that the debt secured by Swissair's security interest in Aircraft N534–TX was in Swiss francs, whereas the other three loans were in U.S. dollars.

At the fifth closing, Aircraft N538–TX was sold and delivered to TI by Swissair and contemporaneously sold to Holdings by TI and leased back to TI. Holdings granted a security interest in Aircraft N538–TX to Swissair to secure a loan from Swissair to Holdings. The loan secured by Aircraft N–538–TX was also in Swiss francs, as evidenced by a promissory note dated January 15, 1982.

Swissair and Texas International executed Amendments Nos. 3 and 5 to the Aircraft Purchase Agreement dated June 18, 1981 with respect to the three U.S. dollar financed aircraft and December 28, 1981 with respect to the two Swiss franc financed aircraft respectively, both amendments expressly deleting the words "purchase money" from the Financing Agreement. The Amendments were signed by representatives of both Texas International and Swissair.

Holdings remained current in its obligation to Swissair through the Petition Date and has made no payments to Swissair since then. The debt outstanding (as of April 22, 1985) at nondefault and default interest rates is as follows:

| Aircraft Reg. No. | Non Default Rate | Default Rate |
|---|---|---|
| N531TX | $4,882,000 | $5,007,000 |
| N532TX | . 4,882,000 | 5,007,000 |
| N533TX | 4,882,000 | 5,007,000 |
| N534TX | sf8,383,000 | sf8,652,000 |
|  | ($3,128,000)* | ($3,228,000)* |
| N538TX | sf9,107,000 | sf9,399,000 |
|  | ($3,389,000)* | ($3,507,000)* |

## CONCLUSIONS OF LAW

■ The major requirement giving a secured party rights under § 1110 of the Bankruptcy Code is that the secured party has a Purchase Money Security Interest in the aircraft or aircraft engines, etc. Under the original Financing Agreement entered into on September 11, 1980 between Swissair and TI, it was agreed that TI would execute a Purchase Money Security Interest in favor of Swissair at the time of closing. However, Amendments 3 and 5, to the Aircraft Purchase Agreement deleted the "purchase money" terms with respect to the Financing Agreement. No evidence was presented that these Amendments were entered into without the consent of Swissair or contesting their validity.

■ The Legislative History of the Bankruptcy Code requires § 1110 to be narrowly construed:

> This section protects a limited class of financers of aircraft and vessels and is intended to be narrowly construed to prevent secured parties or lessors from gaining the protection of the section unless the interest of such lessor or secured party is explicitly enumerated therein.

124 Cong.Rec. H 11, 102 (daily ed. Sep. 28, 1978); 124 Cong.Rec. S 17, 419 (dailey ed. Oct. 6, 1978) *See also In re Air Vermont, Inc.,* 39 B.R. 875, 878 (Bankr.D.Vt.1984); 5 *Collier on Bankruptcy* para. 1110.01(d) at 1110–23 (15th ed. 1984). Applying the requirements of the legislative history to the fact of deletion of the phrase "purchase money" in these agreements, the Court concludes that Swissair does not have a purchase money security interest in the Aircraft necessary to obtain rights under § 1110 and is not entitled to relief under this section.

Section 1110 requires that the PMSI in the aircraft held by the entity seeking repossession be granted by an air carrier "operating under a certificate of convenience and necessity issued by the Civil Aeronautics Board." 11 U.S.C. § 1110(a). There is no dispute that Holdings, which granted the security interest to Swissair, is not an air carrier. Thus, again Swissair

falls outside the "limited class" of secured creditors that section 1110 protects.

The Motion of Swissair for § 1110 relief is therefore denied.