## CHARLESTON.

CITY NAT. BANK OF CLINTON, IOWA, *v.* WEST VIRGINIA FARM BUREAU SERVICE CO. *et al.*

(No. 6584)

Submitted April 29, 1930. Decided May 13, 1930.

*B. S. Honecker,* for plaintiff in error.
*Edmund Lee Jones,* for defendants in error.

MAXWELL, JUDGE:

The Champion Milling & Grain Company, a corporation doing business in the state of Iowa, shipped a carload of animal and chicken feed to Ohio County Farmers' Co-operative, a corporation, on the 1st day of July, 1927; the car being billed to Roney's Point, W. Va. On the same day the said milling company delivered to the City National Bank of Clinton, Iowa, a bill of lading for said goods, and executed and delivered to it a draft on the consignee for $1,275.32, covering the purchase price of said goods. The bill of lading was a uniform straight bill, not negotiable, as contradistinguished from an "order bill of lading," negotiable. In due course, the car of feed reached its destination and was unloaded by the consignee and the goods were taken charge of by it. The West Virginia Farm Bureau Service Company instituted an action at law upon attachment in the circuit court of Ohio county, W. Va., against the Champion Milling & Grain Company, and, upon suggestion that the Ohio County Farmers' Co-operative was indebted to the milling company, process was issued and served upon it requiring it to answer whether it was indebted to the milling company, and, if so, in what amount. The said garnishee answered admitting an indebtedness to the milling company of $1,275.32.

Immediately after acquiring the draft and bill of lading, the City National Bank of Clinton, Iowa, forwarded the same to the Fulton Bank & Trust Company of Wheeling, W. Va., for the collection of the draft. The latter bank being unable to collect the draft because of the garnishment proceeding already mentioned, the City National Bank of Clinton filed its petition in the action of the West Virginia Farm Bureau Service Company against Champion Milling & Grain Company claiming ownership of the funds which had been garnished in the possession of Ohio County Farmers' Co-operative, predicating the petitioner's right to said funds on the purchase which it had made of the Champion Milling & Grain Company of the draft aforesaid. Upon full hearing, the trial court dismissed the petition of the City National Bank of Clinton. The bank prosecutes this writ of error.

It is insisted on the part of the West Virginia Farm Bureau Service Company that this case is controlled by the Federal Bill of Lading Act and the Uniform Bill of Lading Act of the state of Iowa. The section of the Federal Act claimed to be pertinent is section 112 of chapter 4 of title 49 of the U. S. Code, Annotated. Section 112 reads:

"A person to whom a bill has been transferred, but not negotiated, acquires thereby as against the transferor the title to the goods, subject to the terms of any agreement with the transferor. If the bill is a straight bill such person also acquires the right to notify the carrier of the transfer to him of such bill and thereby to become the direct obligee of whatever obligations the carrier owed to the transferor of the bill immediately before the notification.

"Prior to the notification of the carrier by the transferor or transferee of a straight bill the title of the transferee to the goods and the right to acquire the obligation of the carrier may be defeated by garnishment or by attachment or execution upon the goods by a creditor of the transferor, or by a notification to the carrier by the transferor or a subsequent purchaser from the transferor of a subsequent sale of the goods by the transferor.

"A carrier has not received notification within the meaning of this section unless an officer or agent of the carrier, the actual or apparent scope of whose duties includes action upon such a notification, has been notified; and no notification shall be effective until the officer or agent to whom it is given has had time, with the exercise of reasonable diligence, to communicate with the agent or agents having actual possession or control of the goods."

The Iowa Act is of like import, though the phraseology is somewhat different. See Code of Iowa of 1927, c. 435, § 34. It is said, on behalf of the West Virginia Farm Bureau Service Company, that, inasmuch as the consignment herein under discussion was made under a straight bill of lading (nonnegotiable) and no notice was given by the City National Bank of Clinton, as required by both the federal act and the statute of Iowa, the bank lost its right in the premises. That

would probably be true as far as the goods themselves were concerned; that is, if the attaching creditor had proceeded against the goods themselves while in the custody of the carrier in the absence of a notice as provided for in the federal act, the statute quoted would, we presume, place in the attaching creditor a right which would be paramount to the claim of the purchaser and payee of the draft and bill of lading. But it is to be noted that in this case the controversy does not arise over the goods themselves; they were not attached. The controversy is over the purchase money which remains in the custody of the consignee of the goods. We are therefore presented with the problem of the respective rights of the National Bank of Clinton and the West Virginia Farm Bureau Service Company as to the funds in the hands of the consignee, Ohio County Farmers' Co-operative. The bill of lading has fulfilled its mission, and does not enter the problem presented for consideration.

The drawee of the bill of exchange here under consideration did not accept the same for payment. It is a requirement of the Uniform Negotiable Instrument Law that the drawee of a bill of exchange does not become liable thereon until he has accepted the same. We find it thus stated: ''A bill of itself does not operate as an assignment of the funds in the hands of the drawee available for the payment thereof, and the drawee is not liable on the bill unless and until he accepts the same.'' Code of Iowa 1927, c. 424, § 9588. See also Code of West Virginia, c. 98A, § 127.

If the draft which the Clinton bank purchased of the milling company had been accompanied by a negotiable bill of lading, the bank could have protected itself by forwarding the bill of lading with the draft attached to its correspondent bank at Wheeling with instructions that the bill of lading should not be delivered to the consignee or on its order until the draft had been paid. But under a straight bill of lading, such as was employed in this case, the railroad company had the legal right to deliver the consignment to the consignee without the bill of lading being produced by the consignee. In such circumstances, the Bank of Clinton, payee of the draft, as-

sumed the risk incident to an open transaction of that kind. In the absence of notice to the consignee that the consignor had executed and sold a draft to the Clinton Bank for the purchase money, the consignee might with safety have remitted the purchase money direct to the consignor. The draft which was purchased by the Clinton Bank did not constitute any sort of lien or charge upon either the goods or the purchase price thereof in the hands of the consignee. There therefore seems no sound reason why the said purchase money, while still in the hands of the consignee, was not liable under attachment for indebtedness of the consignor. Well-considered cases sustain this line of reasoning. In *Jones* v. *Crumpler*, 119 Va. 143, 89 S. E. 232, point 4 of the syllabus reads: "Under Negotiable Instruments Law (Code 1904, p. 1480) § 127, an unaccepted draft cashed by a bank at the drawer's request did not operate as an assignment to the bank of the drawer's funds in the drawee's possession." The court held that the claim of the bank was inferior to the claim of a creditor of the drawer who attached the funds in the hands of the consignee. Accord *Gardner* v. *Moore's Administrator*, 122 Va. 10, 94 S. E. 162; *Fulton* v. *Gesterding*, 47 Fla. 150, 36 So. 56, Syl. 6.

In our case of *Central Trust Co.* v. *Bank of Mullens*, 108 W. Va. 12, 150 S. E. 137, we held that under the circumstances of that case drafts drawn by the Bank of Mullens upon the First National Bank of Roanoke in favor of the Federal Reserve Bank of Richmond constituted an equitable assignment pro tanto of the specific fund which the drawer had on deposit with the drawee. A controlling distinction between cases of that sort and cases of the kind at bar is that in the former the draft or check is issued against a particular fund, while in the latter the draft is not drawn on a particular fund. The obligation of a drawee in the latter circumstance is far different from the obligation of a bank in the former. Thus in II Morse on Banking, § 502: "A bill ordinarily does not purport to be drawn against funds, the drawee does not hold money on purpose that it may be drawn against in parcels, he has made no promise express or implied to pay such

orders, and it follows of course that no right accrues against him until he accepts; but a check is precisely opposite in these respects, and it would seem from this fact alone that the legal consequences should be opposite." See, also, *Jones* v. *Crumpler*, supra.

Does the bill or draft in question, though inoperative as such because it was not accepted by the drawee, nevertheless operate as an assignment of the right of the drawer or assignor in the fund to the payee or assignee? If so, then the Milling company would thereby have parted with all right to the fund, to the exclusion of its creditors, and the Clinton Bank could enforce collection of the debt from the debtor, the consignee of the goods. It seems to be settled law that a bill of exchange cannot operate as an equitable assignment. "Whether orders, drafts and checks constitute assignments, total or partial, of the funds upon which they are drawn, has been much litigated. A mere order to pay a sum of money if it involves no assertion express or implied that the money is owing to the drawer or if it requests payment irrespective of the existence of any debt, cannot amount to an assignment of a claim which in fact the drawer has against the drawee. And it is of the essence of a negotiable bill of exchange that it shall not be made payable out of a particular fund. Therefore, a bill of exchange is not an assignment, nor is any order which, like a bill of exchange, requests payment to be made irrespective of any funds due to the drawer. * * * Whether a check operates as an assignment pro tanto of the account on which it is drawn is a matter which has involved a difference of opinion." I Williston on Contracts, § 425. "It is well settled that an order drawn on a particular fund is operative as an assignment of the fund, and will make the drawee equitably answerable to the payee for a failure to comply with the order; but it is equally well settled by the great weight of authority in England and America that a bill or draft payable generally, and not specifying or referring to any particular fund, does not operate as an equitable assignment." 3 Ruling Case Law, p. 1298.

From the foregoing considerations, it is evident that the

petitioner, City National Bank of Clinton, Iowa, is without legal standing in this controversy, and that the trial court properly dismissed the said Bank's petition.

*Affirmed.*