MOUNTAINEER ENGINEERING COMPANY

*v.*

CHARLES C. BOSSART, *et al.*

(No. 10173)

Submitted January 31, 1950. Decided February 14, 1950.

*McCamic & Clarke, Charles McCamic, Kountz, Fry, Staley & Meyer,* for appellant.

*Theron L. Caudle,* Assistant Attorney General of the United States, *Ellis N. Slack,* Special Assistant to the Attorney General, *Frank K. Foster,* Special Assistant to the Attorney General, *C. Lee Spillers,* United States Attorney, *Howard Caplan,* Assistant United States Attorney, for appellee, United States of America.

GIVEN, JUDGE:

In August, 1947, the appellant, Mountaineer Engineering Company, a corporation, obtained a judgment against

Charles C. Bossart for $4,786.55 in a United States District Court in Pennsylvania. The plaintiff filed its bill of complaint in the Circuit Court of Monongalia County, setting up its foreign judgment and praying a judgment thereon in that court against Charles C. Bossart. An affidavit having been filed in the cause stating the defendant, Charles C. Bossart, to be a non-resident of West Virginia, an attachment was issued and levied pursuant to the provisions of Article 7, Chapter 38, Code, 1931, as amended, upon the funds of the defendant Charles C. Bossart on deposit in the First National Bank of Morgantown. This levy was made at four o'clock in the afternoon of February 3, 1948. A second attachment was levied on the 5th day of February, 1948. At the time of the levy of the attachments there was on deposit in said bank, in the name of "Charles Bossart," $234.96 and in the names of "Charles C. Bossart or Lois M. Bossart," $2,146.22. Bossart does not contest the validity of the attachment. On January 30, 1948, Bossart mailed to the Federal Collector of Internal Revenue two tax returns indicating a tax liability of $282.81 for federal insurance contributions tax, and liability of $1,-624.66 federal income tax. On the same day Bossart executed two checks, drawn on said bank, covering the respective tax returns, and mailed them to the Collector with the returns. On the following day there was deposited in the aforesaid bank the sum of $1,907.47, the amount of the two checks. The checks were later presented for payment and payment by the bank refused because of the previously levied attachment. The United States intervened in the suit, claiming prior rights to the attached funds on the theory that the checks constituted an equitable assignment *pro tanto* of the funds attached. The lower court overruled a demurrer to the intervening petition and, the cause having been submitted upon the pleadings by agreement, held that the United States acquired prior right to the funds attached to the extent of the amount of the two checks, by virtue of an equitable assignment.

The controlling question in this case is whether the checks constituted an equitable assignment *pro tanto* of

the funds attached. West Virginia Code, 46-16-6, is: "A check of itself does not operate as an assignment of any part of the funds to the credit of the drawer with the bank, and the bank is not liable to the holder, unless and until it accepts or certifies the check." This section, taken from the uniform negotiable instruments law, deals primarily with liability as between the drawer of a check and the bank upon which the check is drawn. The statute does not deal directly with liability as between the drawer and drawee or where third parties may assert claims. It does say, however, that a mere check, of itself, does not necessarily create an equitable assignment. In the case of *Central Trust Company, Receiver, etc.* v. *Bank of Mullens, et al.,* 108 W. Va. 12, 150 S. E. 137, this Court held that a check, under the circumstances of that case, constituted an equitable assignment of the fund against which it was drawn. In that case there existed an agreement between the Federal Reserve Bank of Richmond, intervenor, and the Bank of Mullens, whereby the Bank of Mullens was to collect certain checks forwarded to it by the intervenor by charging the same to depositors of the Bank of Mullens. The Bank of Mullens did collect the checks in the manner agreed upon and forwarded its drafts for the amounts so collected. Before payment of the drafts, however, the Bank of Mullens was closed. Under these circumstances this Court held the drafts to constitute an equitable assignment.

The facts of the present case do not bring it within the rule laid down in the *Mullens* case. Here the checks were drawn against a general bank account, not against a specific fund. There are in the present case no facts tending to show that the transaction was anything other than an ordinary check transaction.

In *City National Bank of Clinton, Iowa* v. *West Virginia Farm Bureau Service Company,* 109 W. Va. 158, 153 S. E. 300, a draft was drawn upon a general fund and there were present no circumstances indicating that the draft was intended as an equitable assignment. The Court held that: "Under Negotiable Instrument Law (Code, c. 98A)

§127, an unaccepted draft, not drawn on a specific fund, purchased of the drawer by the payee (a bank) does not operate as an assignment to the bank pro tanto of the drawer's funds in the drawee's possession." This case clearly distinguishes the *Mullens* case. Daniel on Negotiable Instruments, 7th Ed., Vol. III, Section 1847, states the rule to be: "An ordinary check, not describing any particular fund and not drawn under such circumstances as to constitute an assignment in fact, is not such an assignment of the funds as to defeat an attachment or garnishment levied before the presentation and acceptance of the check by the drawee." To the same effect is 7 Am. Jur., Banks, Section 533, and Beutel's Brannan, Negotiable Instruments Law, 7th Edition, Section 189. The facts in this case bring it within the rule laid down in the *West Virginia Farm Bureau Service Company* case.

The intervenor also contends that it is entitled to priority in the disbursement of the attached funds because of a trust in its favor created by Title 26, Section 3661, United States Code. Such a trust, however, cannot be enforced unless the trust fund can be traced or identified. Nothing in the record of this cause indicates that the attached funds, or any part thereof, were ever set aside or treated as a trust fund by the employer. 54 Am. Jur., Section 249; *Barrs* v. *Barrs' Rent-a-Car Co.*, 50 N. E. 2d 388, 71 Ohio App. 465.

In its brief the intervenor attacks the sufficiency of the attachment on the ground that the writ issued on the third of February, 1948, was not signed by the clerk, and that the writ served on the fifth of February, 1948, was not supported by a new or amended affidavit. The filing of the affidavit and the issuance of the second writ being so near the same time, this cannot be treated as a fatal defect. *Ballard* v. *Great Western Mining and Manufacturing Company*, 39 W. Va. 394, 19 S. E. 510. Moreover, it would seem that since the intervenor has no lien or prior right to the fund attached it cannot question the sufficiency of the attachment.

From the foregoing it is clear that the demurrer to the petition of the intervenor should have been sustained and without proper amendment the petition dismissed.

*Reversed and remanded.*