**In re AIR FLORIDA SYSTEMS, INC., Debtor.**

**AIR FLORIDA SYSTEMS, INC., and Air Florida, Inc., Plaintiffs,**

**Official Statutory Creditors Committee, Intervenor,**

v.

**UNITED STATES of America, et al., Defendants.**

**Bankruptcy No. 84–01233–BKC–SMW–A. Adv. No. 84–0667–BKC–SMW–A.**

United States Bankruptcy Court, S.D. Florida.

July 1, 1985.

Arnold D. Schatzman, Britton, Cassel, Schantz & Schatzman, P.A., Miami, Fla., for Creditors Committee.

John K. Olson, Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., Tampa, Fla., for Air Florida.

Richard F. Mitchell, Dept. of Justice, Tax Div., Washington, D.C., for the U.S. (I.R. S.).

Charles L. Schlumberger, J. Christopher Kohn, Daniel E. Loeb, Dept. of Justice, Civil Div., Washington, D.C., for the U.S. (F.A.A.).

Robert A. Greenspon, Robinson & Cole, Stamford, Conn., for GPA.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

SIDNEY M. WEAVER, Bankruptcy Judge.

This Cause came on before the Court on March 15, April 11, and April 18, 1985 on the Debtor's complaint against the Defendant, United States of America, Internal

Revenue Service, to avoid pre and post petition transfers pursuant to 11 U.S.C. §§ 547 and 549. The complaint sought to recover from this Defendant: a) $8,021,-209.28 paid by AIR FLORIDA to the IRS as a claimed preference (Count I); b) $650,-000.00 paid by AIR FLORIDA to the IRS as a claimed improper postpetition transfer (Count II); and c) $680,000.00 which AIR FLORIDA currently holds subject to this Court's ruling in this adversary case (Count III).

The FEDERAL AVIATION ADMINIS-TRATION (FAA), GPA CORPORATION, GPA LEASING (NA) N.V. and GPA GROUP LTD. (collectively GPA), were joined as Defendants in Counts II and III only because they claim a security interest in any sums AIR FLORIDA recovers from the IRS. The FAA and GPA claims have been bifurcated pending the results of this trial. The OFFICIAL STATUTORY CREDITORS COMMITTEE of the unsecured creditors (COMMITTEE), was permitted to intervene due to the magnitude and importance of this matter and because of a potential conflict of position by AIR FLORIDA relating to the claims which are the subject of Counts II and III of the complaint.

The Court having heard the testimony, examined the evidence, observed the candor and demeanor of the witnesses, considered the arguments of counsel, and being otherwise fully advised in the premises, does hereby make the following findings of fact and conclusions of law:

## COUNT I ISSUES

During portions of the calendar year 1983, AIR FLORIDA incurred federal excise tax obligations totalling $3,952,062.98 and federal wage related tax obligations totalling $4,069,146.30. The IRS filed its notices of tax lien on December 22, 1983 ($4,352,664.30); February 1, 1984 ($1,541,-937.09); and February 2, 1984 ($2,126,-607.89); totalling $8,021,209.28. These lien notices were filed with the Clerk of the Circuit Court in Dade County, Florida. No notices of lien were filed with the office of

the FAA in Oklahoma City, Oklahoma, nor were they filed with the United States District Court for the Southern District of Florida.

Beginning as early as December, 1983, AIR FLORIDA was engaged in negotiation for the sale of four Boeing 737.200 advanced aircraft, which culminated in GPA's subsequent purchase of them in April and May, 1984. After a careful review of the evidence, the Court finds the total purchase price to be the sum of $47,000,000.00. AIR FLORIDA deemed it necessary to satisfy in full these tax notices of $8,021,209.28 in order to allow AIR FLORIDA to proceed with the sale because the IRS claimed liens upon the aircraft by virtue of its filed lien notices.

After satisfying superior lienholders' interests, the sale of the four aircraft realized only $5,410,954.00 to be applied to the IRS debt. AIR FLORIDA borrowed $2.6 million from GPA which, together with $68,895.23 of AIR FLORIDA's own funds, was used to satisfy the IRS obligation.

It is not disputed that these payments to the IRS were made for an antecedent debt, paid within ninety (90) days of the bankruptcy petition, and made at a time when AIR FLORIDA was insolvent. Nor is it disputed that the monies necessary to satisfy the IRS claim came exclusively from GPA's cashiers checks payable and delivered directly to the IRS, plus $68,895.23 paid from AIR FLORIDA's general funds.

The Court further finds that if AIR FLORIDA had been liquidated under Chapter 7 on July 3, 1984, the sum realized would have been insufficient to pay AIR FLORIDA's debt to IRS under distribution priorities established by 11 U.S.C. § 507 and thus any payment received by the IRS was preferential.

The IRS claimed a lien for taxes on all assets of the Debtor. Other than an equity in the aircraft sold, all assets of AIR FLORIDA were fully encumbered, except for AIR FLORIDA's accounts receivables. These receivables must be evaluated by considering evidence of setoffs, uncollecta-

ble accounts, AIR FLORIDA's declining revenue base, sums actually received but not recorded, rejected and unidentifiable credit card items and the generally poor state of AIR FLORIDA's financial condition and record keeping at the times material to this case. The Court finds from the evidence relating to these factors that AIR FLORIDA's accounts receivable did not exceed $1.7 million.

■ At the time of the filing of the IRS's first lien INTERFIRST BANK DALLAS, N.A. held a first priority lien upon AIR FLORIDA's receivables which was subsequently assigned to the FAA as of January 6, 1984. In the FAA's hands, this lien secured $6 million of debt owed to the FAA, which clearly establishes a lack of equity in the receivables for the IRS. The IRS lien could not attach to the accounts receivable, as they were valued out pursuant to Section 506.

■ Section 724(b) of the Bankruptcy Code requires that certain administrative expenses and other priorities be paid before a valid tax lien is satisfied. Thus, even where a valid tax lien exists, payments made on that lien within the 90 days preceding bankruptcy can result in the IRS receiving more than it would have under a Chapter 7 liquidation and thus constitute avoidable preferences. See *In re R & T Roofing Structures & Commercial Framing, Inc.,* 42 B.R. 908, 915 (D.Nev.1984); *In re Scherbenske Excavating, Inc.,* 38 B.R. 84, 87 (Bankr.D.N.D.1984); *Matter of Community Hospital of Rockland County,* 15 B.R. 785, 788–89 (Bankr.S.D.N.Y.1981). Indeed, this Court has expressly recognized that application of §§ 547 and 724(b) can produce this result. *In re Debmar Corp.,* 21 B.R. 858, 862 (Bankr.S.D.Fla.1982).

■ This Court, considering principles established in *United States v. Whiting Pools, Inc.,* 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983), stated in *In re Debmar Corp., supra,* that such sums as the government may have received during the 90-day period could be avoided as a preference, provided the necessary elements of

§ 547 were proved. Such sums constitute property of the estate. 11 U.S.C. § 541.

■ Considering the prime bankruptcy policy of equality of distribution among creditors, together with the additional purpose of § 547 of preventing courthouse races by creditors shortly before bankruptcy to economically and otherwise dismantle the debtor, it is more reasonably understood that the recovery of property preferentially transferred serves the best interest of all creditors and promotes a level of comfort that no creditor will receive a greater payment than others of his class. To this end, neither the Bankruptcy Code, nor any other legislation, permits the IRS to be treated any more favorably than any other creditor of the estate. See *In re R & T Roofing Structures, supra.*

■ The IRS argues that its release of lien constitutes "new value" and thereby prevents this Court finding a preferential transfer. However, a release of a lien, in and of itself, cannot constitute new value. See *Matter of Lario,* 36 B.R. 582 (Bankr.S.D.Ohio 1983) (forbearance from exercising eviction rights in lease is not new value); *In re Ken Gardner Ford Sales, Inc.,* 23 B.R. 743 (Bankr.E.D.Tenn.1982) (release of motor vehicle lien is not new value); *In re George Rodman, Inc.,* 39 B.R. 855 (Bankr. W.D.Okla.1984) (payment made in exchange for lien release on a worthless oil well was preference).

Ordinarily, aircraft liens are recorded pursuant to the recording instructions found in the Federal Aviation Act. 49 U.S.C. § 1403 of that Act requires liens be filed in the office of the Administrator in Oklahoma City, Oklahoma. *Philko Aviation, Inc. v. Shacket,* 462 U.S. 406, 103 S.Ct. 2476, 76 L.Ed.2d 678 (1983); *In re La Mancha Aire, Inc.,* 41 B.R. 647 (Bankr.S.D. Fla.1984). However, 14 C.F.R. § 49.17 provides certain exceptions with respect to the filing of a notice of federal tax lien. This Rule provides that federal tax liens against aircraft be filed in accordance with requirements of the Internal Revenue Code (26 U.S.C. § 6323).

14 C.F.R. § 49.17 appears, on its face, to conflict with the Congressional policy that all instruments affecting civil aircraft be filed with the FAA in Oklahoma City in order to be effective. 49 U.S.C. § 1403; *Philko Aviation, Inc. v. Shacket, supra.* Indeed, legislative history states that "to determine whether there are any encumbrances on [an] aircraft, it is only necessary to consult the central file." S.Rep. No. 1060, 88th Cong., 2d Sess., p. 2 (June 5, 1964); U.S.Code Cong. & Admin.News 1964, pp. 2319, 2320. The same rules apply for liens held by the United States as for liens held by private citizens. *U.S. v. United Aircraft Corp.,* 80 F.Supp. 52 (D.Conn. 1948). It would thus appear that 14 C.F.R. § 49.17 conflicts with 49 U.S.C. § 1403 to the extent it purports to exempt federal tax liens from central filing requirements. However, the apparent conflict is cured under Florida law by Florida Statutes § 329.01.

The Internal Revenue Code directs that federal tax liens be recorded in accordance with the filing requirements of state laws. 26 U.S.C. § 6323(f). The IRS recorded its notices of lien with the clerk of the Dade County, Florida Circuit Court, believing Florida Statutes § 28.222 (relating to the filing of documents in the public records— generally) controlled. However, the only Florida Statute specifically on point and which deals with the place of filing liens against aircraft is Florida Statute § 329.01, which provides:

No instrument which affects the title to or interest in any civil aircraft of the United States, or any portion thereof, shall be valid in respect to such aircraft or portion thereof, against any person other than the person by whom the instrument is made or given, his heirs or devisee, and any person having actual notice thereof, until such instrument is recorded in the office of the civil aeronautics administrator of the United States, or such other office as is designated by the laws of the United States as the one in which such instruments should be filed. Every such instrument so recorded in such office shall be valid as to all persons without further recordation in any office of this state. Any instrument, recordation of which is required by the provisions of this section, shall take effect from the date of its recordation and not from the date of its execution.

■ Florida Statutes § 329.01 is consistent with 49 U.S.C. § 1403 in requiring that all liens affecting civil aircraft be recorded in the FAA's central filing system. Provisions of Florida Statutes § 329.01 should have led the IRS back to the FAA Administrator in Oklahoma City for the filing of its lien on AIR FLORIDA's aircraft as required by provisions of 49 U.S.C. § 1403 and 26 U.S.C. § 6323(f), when the proper state law is applied. As noted by the court in *In re Cone,* 11 B.R. 925 (Bankr.M.D.Fla. 1981), aircraft are uniquely mobile and the Federal Aviation Act provides a uniform nationwide mechanism for registering ownership and encumbrances of aircraft. See also *O'Neill v. Barnett Bank of Jacksonville, N.A.,* 360 So.2d 150 (1st. DCA Fla. 1978). Florida Statutes § 329.01 promotes such meaningful and uniform filing requirements. The IRS's failure to follow the clear and specific language of Florida Statutes § 329.01 rendered its claimed lien upon AIR FLORIDA's aircraft "unperfected." See *In re Cone, supra.*

■ Further, well-established rules of statutory construction dictate that Florida Statutes § 329.01, which deals with the "specific" subject matter of aircraft liens, controls over Florida Statutes § 28.222, which merely deals with recording tax liens "generally". *Adams v. Culver,* 111 So.2d 665 (Fla.1959); 49 Fla.Jur.2d *Statutes* § 182.

Florida Statutes §§ 329.01 and 28.222 create no less than two different places where the IRS could have filed its liens. That being the case, 26 U.S.C. § 6323(f)(1)(B) controls and directs that filing of the lien should be made with the clerk of the United States District Court, "... whenever the State has not by law designated one office which meets the requirements of subparagraph (A)...."

Subparagraph (A) requires liens be filed under state law.

The IRS acknowledged its unfamiliarity with Florida Statutes § 329.01. However, the IRS conceded that if such an aircraft filing requirement, i.e., Section 329.01, does exist, then it creates a "multi" office filing procedure violative of the "one" office rules of 26 U.S.C. § 6323(f)(1)(B). Hence, if both Florida Statutes §§ 329.01 and 28.-222 identify appropriate places for the filing of the IRS's liens under Florida law, then the United States District Court for the Southern District of Florida would be the only proper place for the IRS to have filed its notices of lien because of the application of 26 U.S.C. § 6323(f)(1)(B).

■ Since the IRS failed to follow filing requirements of both federal and state law, its lien notices are invalidly recorded and unperfected. *Feldman v. First National City Bank*, 368 F.Supp. 1333 (S.D.N.Y. 1974) (reversed on statute of limitation grounds), 511 F.2d 460 (2d Cir.1975); *Pegasus International Travel Club v. Knupp*, 15 B.R. 842 (Bankr.M.D.Pa.1981). Therefore, this Court finds that the IRS's claimed lien is unenforceable against third parties and is subordinate to the debtor-in-possession's interest in the money paid over to the IRS. *Philko Aviation, Inc. v. Shacket, supra; South Shore Bank v. Tony Mat, Inc.*, 712 F.2d 896 (3rd Cir.1983); *In re Air Vermont, Inc.*, 39 B.R. 875 (Bankr.D.Vt.1984).

The IRS conceded that its initial defense, based upon 11 U.S.C. § 547(c)(2), was inapplicable. The IRS further failed to make a showing to support a "contemporaneous exchange" defense under 11 U.S.C. § 547(c)(1). Additionally, the Court finds that an unperfected lien upon aircraft, coupled with a failure to establish a valuable lien on AIR FLORIDA's other assets, defeats the IRS's defense under 11 U.S.C. § 547(c)(4).

■ The Court recognizes that under Internal Revenue Code § 6323 the IRS accedes to a priority position over existing liens on receivables arising 45 days after the filing of the IRS lien. In the instant case the Court finds that no existing lienholder had notice of IRS's lien that would prevent the running of this 45 day rule. However, there is lack of sufficient evidence to determine the value of those AIR FLORIDA receivables which arose 45 days after the IRS's liens, if any. The IRS's failure to establish the aging of AIR FLORIDA's receivables results in it occupying a position on receivables inferior to the $6 million security interest of the FAA. Since the Court has found that AIR FLORIDA's receivables at all material times are valued at no more than $1.7 million, the IRS's debt is valued out and is unsecured, 11 U.S.C. § 506, and the IRS has failed to establish "new value" as a defense under 11 U.S.C. § 547. *See In re Head*, 26 B.R. 578, (Bankr.M.D.Fla.1983); *In re Ken Gardner Ford Sales, Inc., supra; In re Nevada Emergency Service, Inc.*, 39 B.R. 859 (Bankr.W.D.Okla.1984).

Based upon the testimony and evidence presented, the Court finds that AIR FLORIDA never maintained segregated accounts for the collection of excise, wage-related or other forms of taxes. All sums received by AIR FLORIDA, from all sources, were deposited and commingled in AIR FLORIDA's general operating accounts and thus became unidentifiable. The sources of such funds included such non-excise and non-wage related tax matters as the overseas sale of passenger tickets and cargo, sales of inventory and parts items and maintenance services performed for other airlines. Additionally, AIR FLORIDA's financial situation was such that by the end of each business day AIR FLORIDA had substantially or completely zeroed out its operating accounts by moving and merging funds from various accounts to obtain sufficient balances to cover obligations being paid.

■ The IRS also claimed that of the $8,021,209.28 paid by AIR FLORIDA, $7,036,866.69 represents monies held in trust pursuant to provisions of 26 U.S.C. § 7501. However, none of the monies received by IRS came from the collection of

taxes from which a trust could be created. To the contrary, all but $68,895.23 came directly from GPA to the IRS without ever touching the hands of AIR FLORIDA. Further, those sums were paid the IRS involuntarily as a result of levy threats and the IRS's refusal to release its claimed liens against the aircraft, which liens the Court has previously held were not properly perfected.

Title 26 U.S.C. § 7501(a) may impose a trust only upon, "... the amount of tax so collected or withheld...." The IRS failed to establish what sums, if any, were "collected." Even if the IRS had overcome this burden, the Court finds that AIR FLORIDA did not "withhold" any funds, and, the IRS made no attempt to trace or identify any funds in controversy as taxes so collected or withheld.

Section 7501 does not impose upon AIR FLORIDA an obligation to turn over to the IRS those funds received from GPA and from its general funds as said funds were unrelated to the taxes IRS sought to satisfy. The scope of § 7501 limits the trust fund theory to the amounts of taxes withheld or collected, and otherwise requires a showing of the existence of a relationship between the funds collected and any trust created. See *Slodov v. U.S.*, 436 U.S. 238, 98 S.Ct. 1778, 56 L.Ed.2d 251 (1978). This, the IRS has failed to do.

▆▆ The IRS's failure to trace commingled funds further prevents the imposition of the trust fund theory urged by the IRS. See *In re First Fidelity Financial Services, Inc.*, 36 B.R. 508 (Bankr.S.D.Fla.1983); *In re Allied Electric Products, Inc.*, 194 F.Supp. 26 (D.C.D.N.Y.1961); *Mountaineer Engineering Co. v. Bossart*, 133 W.Va. 668, 57 S.E.2d 633 (1950); *U.S. v. Randall, Trustee in Bankruptcy*, 401 U.S. 513, 91 S.Ct. 991, 28 L.Ed.2d 273 (1971). Similarly, when AIR FLORIDA's bank accounts were cleared on a daily basis and 99% of the amounts in controversy were never in AIR FLORIDA's possession, there could be no corpus to which a trust could attach.

For the reasons stated, the payment of the $8,021,209.28 by AIR FLORIDA to the IRS within 90 days of the filing of this bankruptcy proceeding constitutes a preferential transfer under 11 U.S.C. § 547. This sum is property of the estate pursuant to 11 U.S.C. § 541, and must be returned to the estate.

### COUNTS II AND III ISSUES

Counts II and III of the complaint deal with prepetition federal excise tax obligations of AIR FLORIDA. The sum of $650,000.00, referred to in Count II, was actually paid by AIR FLORIDA to the IRS postpetition. AIR FLORIDA was prepared to pay to the IRS the sum of $680,000.00, referred to in Count III, but reserved payment pending the resolution of this adversary proceeding.

The facts as to these counts are not disputed by the parties. An excise tax is imposed upon the sale of airline tickets in domestic flights and is collected by the airline as a part of the ticket's purchase price. Upon collection, the airline must report and pay the tax over to the Internal Revenue Service. See 26 U.S.C. §§ 4261, 4291. 26 C.F.R. § 49.6302(c)–1(a)(ii) and (III) provide for turnover of the sums collected in semi-monthly installments.

AIR FLORIDA would estimate ticket sales and make deposits of tax estimates from commingled general operating accounts because of the large volume of sales and the complexity of reporting transactions between airlines, travel agents and clearing houses. Not only did AIR FLORIDA fail to segregate tax sums collected, the Debtor was unable to earmark excise tax monies collected until after monies were actually received and sales reports were run.

On July 16, 1984, a postpetition deposit of $300,000.00 was made to the IRS as an excise tax payment on prepetition ticket sales for the two-week period ending May 31, 1985. On July 17, 1984, a postpetition deposit to the IRS of $350,000.00 was made as an excise tax payment on prepetition

ticket sales for the two-week period ending June 15, 1984.

All sums involved in Counts II and III represent excise taxes for additional tickets sold prepetition since AIR FLORIDA stopped flying as of the date this bankruptcy was filed and no additional excise taxes were incurred. It is the IRS's burden to establish the validity of a postpetition transfer. 11 U.S.C. § 549, Bankruptcy Rule 6001. Both AIR FLORIDA and the IRS argue that the IRS is entitled to those monies because (1) the payment is expressly authorized by this Court's July 6, 1984 Order, and (2) the funds involved are 26 U.S.C. § 7501(a) trust funds, and, hence, are not property of the estate.

The Court's July 6, 1984 Order is a form Order which this Court regularly enters. It was never intended as a vehicle to modify or extend established principles of law. This Order simply is entered to place debtors-in-possession on notice of the usual obligations of administering an estate. Although the Order directs the debtor-in-possession to pay excise taxes, it is commonly known that the Order relates only to postpetition taxes in this regard. Paragraph 9 of the Order makes this clear:

> All tax returns of Federal, State or subdivisions thereof shall be timely filed and shall be accompanied by any sums due for unpaid post-petition taxes under such returns....

The Court's July 6, 1984 Order does not authorize and will not support the payment of these prepetition taxes.

As to the trust theory broached as a defense to Counts II and III, the Court finds that no funds exist or are traceable to which a trust could be imposed because no monies were held which could be identified or traceable as excise tax collections.

The only favored treatment given excise taxes under the Bankruptcy Code pertinent to this case is a sixth priority under 11 U.S.C. § 507(a)(6)(E) for such prepetition taxes. Neither this Section nor any other provision of the Code otherwise authorizes such a postpetition payment of a prepetition debt. Title 11 U.S.C. § 549 dictates to the contrary and the payment cannot be authorized as an administrative expense. See *Matter of Jartran, Inc.*, 732 F.2d 584 (Ca. 7 1984). Although *Jartran* dealt with an administrative claim under § 503, the legal principles equally apply here to bar payment of a prepetition excise tax under the guise of a postpetition administrative expense. Section 507 makes it clear that prepetition excise tax obligations cannot be paid postpetition, except under the Bankruptcy Code's distribution priorities.

Accordingly the Court finds that the sum of $650,000.00 paid the IRS postpetition must be returned to the estate and the sum of $680,000.00 currently being segregated must be released to the estate for legitimate estate purposes.

## CONCLUSION

Reorganization of a debtor-in-possession has little likelihood of success unless all property of the estate is available to be utilized in the reorganization effort. Such property certainly includes whatever may improperly be in the possession of a creditor. 11 U.S.C. § 541. Sections 547 and 549 constitute effective tools for mustering the entirety of the estate's property while the Bankruptcy Code as a whole seeks to protect and preserve the bankruptcy estate for the benefit of all interested parties. To this end the IRS is as much bound by the Code's provisions as are other creditors. *U.S. v. Whiting Pools, Inc., supra.*

The application of the facts of this case to the established law dictates that the sum of $8,021,209.28 (Count I) was paid to the IRS as a preferential transfer in violation of 11 U.S.C. § 547, and is therefore avoided, and that the sum of $650,000.00 (Count II) was paid to the IRS postpetition in violation of 11 U.S.C. § 549, and is therefore avoided. Accordingly, the IRS shall be required to return to the debtor-in-possession the sum of $8,671,209.28. Further, the sum of $680,000.00 (Count III), together with all accumulated interest, currently

held by the debtor-in-possession shall be released to the estate.

A separate judgment will be entered in conformity with these Findings of Fact and Conclusions of Law.